The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

E.L.A. and O.L.C.,

               Plaintiffs,

   v.

UNITED STATES OF AMERICA,

               Defendant.

CASE NO.  C20-1524-RAJ

UNITED STATES' MOTION
TO TRANSFER VENUE AND
PARTIAL MOTION TO DISMISS

Noted for consideration:
February 12, 2021

## I.    INTRODUCTION

COMES NOW the United States, by and through Brian T. Moran, United States Attorney for the Western District of Washington, and Nickolas Bohl and Kristen R. Vogel, Assistant United States Attorneys for that district, and hereby files this motion (1) to transfer venue because venue is improper under 28 U.S.C. § 1406(a), or, alternatively, is inconvenient under 28 U.S.C. § 1404(a); and (2) to partially dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs ELA and OLC, father and son, bring this action against Defendant ("Defendant" or "United States"), pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, seeking damages for torts allegedly committed by U.S. Customs and Border Protection ("CBP") agents, Health and Human Services ("HHS") employees, and U.S. Immigration and Customs Enforcement ("ICE") officials concerning the detention and separation of ELA and OLC after they illegally entered the United States in 2018.  After Plaintiffs were

arrested illegally crossing the border, government officials separated ELA and OLC per the federal zero tolerance policy, which is no longer in place.  ELA was deported to his native Guatemala, and OLC was transferred to a New York boys' home that contracted with HHS to provide care and custody to unaccompanied minors, where Plaintiffs allege OLC was mistreated. ELA later returned to the United States, claimed asylum and was reunited with OLC.  Both live in Seattle.

In an FTCA case, venue is proper either where the alleged tort occurred or where a plaintiff resides.  Because venue jurisprudence has long regarded the residence of non-permanent-resident aliens as being outside the United States, venue is only proper where the alleged torts occurred—here, either the Southern District of New York or the Southern District of Texas.  The Southern District of Texas is also more convenient.  Were the Court to maintain venue in this District, Plaintiffs' claims for abuse of process and negligence should still be dismissed because Plaintiffs have failed to show any alleged process was misused and they fail to plead negligence with any particularity.  The parties met and conferred regarding this motion but were unable to reach a resolution.  Declaration of Nickolas Bohl ("Bohl Decl."), ¶ 9.

## II.    FACTS[1]

This matter alleges that federal employees committed tortious acts by carrying out the previous administration's alleged zero tolerance policy.  ELA was separated from his son, OLC, in Texas, and then ELA was detained in Texas and OLC was detained in Texas and New York. None of the alleged acts or omissions occurred in Washington State.  When Plaintiffs first entered the United States, they intended to live in Philadelphia, Pennsylvania, for three years to find better employment.  Now, however, they are in Seattle and have brought suit here.

---

[1] As explained more fully below, the Government presents additional facts outside the complaint to support its argument that venue is improper in this district and that Plaintiffs have not established they are domiciled here. There is no allegation or evidence that Plaintiffs intend to make Seattle their permanent home.  Other than the issue concerning where Plaintiffs are domiciled, the United States assumes the truthfulness of Plaintiffs' allegations solely for the purpose of this motion and reserves the right to challenge Plaintiffs' allegations at the appropriate time.

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    On or about June 19, 2018, ELA and OLC illegally entered the United States at Rio

2   Grande Valley, Texas.  Compl., ¶ 20.  After his apprehension, ELA told CBP officials he was

3   coming to the United States to find work near Philadelphia, Pennsylvania, where he and OLC

4   had family and friends.  Bohl Decl., ¶¶ 3-5, Exs. A-C.  Adhering to then-federal policy, CBP

5   separated ELA from his 17-year-old son.  Compl., ¶ 21.  CBP continued to detain ELA in Texas

6   and OLC was transferred to Lincoln Hall Center for Boys in New York, a private facility that

7   contracts with HHS for the care and custody of unaccompanied minors.  Compl., ¶¶ 50, 51.

8   According to CBP records, ELA did not seek asylum at that time, but OLC did.  ELA alleges he

9   did seek asylum, but CBP ignored the request.  Compl., ¶ 25.  ELA was charged and convicted

10   of 8 U.S.C. § 1325.  Compl., ¶ 31.  ELA alleges that he was subjected to inhumane conditions

11   during his detention.  Compl., ¶¶ 26-27.  On July 20, 2018, approximately a month after his

12   entry, ELA was removed to Guatemala.  Compl., ¶ 42.  At that time, CBP offered to reunite ELA

13   with his son, but ELA declined and instead chose for OLC to remain at Lincoln Hall in New

14   York, suggesting ELA intended to return to the Northeast and join his son.  Bohl Decl., ¶ 6,

15   Ex. D.  In his complaint, ELA alleges that he hoped to be reunited with his son in July 2018.

16   Compl., ¶ 43.

17    During OLC's detainment in New York, Plaintiffs allege that a female worker at Lincoln

18   Hall gave OLC a self-photograph of herself in a state of undress, that other employees showed

19   OLC pornographic videos, and that a female staff member was alone with him in a restroom for

20   an extended period of time, after which OLC had a "groin injury."  Compl., ¶ 5.

21    On March 2, 2019, ELA reentered the United States at the Calexico West Point of Entry

22   in California.  Compl., ¶ 45.  He sought asylum and provided records for a sponsor located in

23   Washington State.  Compl., ¶ 47.  OLC was then released from Lincoln Hall and transported to

24   Seattle, Washington.  Compl., ¶ 46.  Plaintiffs' asylum application remains pending and they

25   currently have no legal status in the United States.

26

27

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

### III.   STANDARD OF REVIEW

#### A.   <u>Federal Rule of Civil Procedure 12(b)(3)</u>

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may submit a timely motion to dismiss for improper venue.  The plaintiff has the burden of demonstrating that venue is proper.  *See, e.g.*, *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).  In deciding whether venue is proper, the Court may consider facts outside the pleadings and need not accept the pleadings as true.  *Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1254 (9th Cir. 2005).  In this case, the United States assumes, solely for purposes of this motion, that the facts in Plaintiffs' complaint are true other than those concerning where Plaintiffs are domiciled.  The United States submits evidence showing that Plaintiffs cannot establish they are domiciled in Washington State.  *See* Bohl Decl., ¶ 2.

Whether to dismiss for improper venue, or alternatively to transfer venue to a proper court, is a matter within the sound discretion of the district court.  *See, e.g.*, *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).

#### B.   <u>Section 1404(a)</u>

When a party seeks transfer under 28 U.S.C. § 1404(a), the Court engages in a two-step analysis, first asking whether this action "might have been brought" in a transferee court, then considering whether transfer is more appropriate under § 1404(a) in light of a number of various factors: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 n.5, 498-99 (9th Cir. 2000).  These factors are not exhaustive, however, and they "cannot be mechanically applied to all types of cases."  *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005).  "The burden is on the party seeking transfer to

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

show that when these factors are applied, the balance of convenience clearly favors transfer." *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014) (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).

### C.   Federal Rule of Civil Procedure 12(b)(6)

A motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  Although a court must accept as true all well-pled factual allegations in a complaint, it need not credit allegations that are merely conclusory.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (internal citation and quotations omitted).  Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.* at 678.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.*

## IV.   ARGUMENT

### A.   Plaintiffs' Lawsuit Should Be Transferred

####    1.   Venue Law Precludes a Non-Permanent-Resident Alien from Claiming Residency

Pursuant to 28 U.S.C. § 1402(b), an FTCA action "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."  Plaintiffs assert that venue is proper in this District because they reside here.  Compl., ¶ 11 ("Venue is proper in the Western District of Washington under 28 U.S.C. § 1402(b) because Plaintiffs reside in this District.").  Plaintiffs appear to currently live in Seattle.  *Id.* at ¶ 46.

But even if Plaintiffs are living in the Western District of Washington, they do not "reside" here for purposes of venue.[2]  Historically, residency—for purposes of venue—has only included citizens.  Recently, Congress broadened that to include noncitizens who possess lawful permanent resident ("LPR") status.  Specifically, 28 U.S.C. § 1391(c)(1) provides:

---

[2] This same argument is pending before Judge Lasnik in another FTCA matter. *See Luna v. United States*, No. 20-1152-RSL (W.D. Wash.).  The United States will update the Court when Judge Lasnik issues a ruling.

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   For all venue purposes—(1) a natural person, including an alien *lawfully*
2   *admitted for permanent residence* in the United States, shall be deemed to reside
    in the judicial district in which that person is domiciled.

3   *Id.* (emphasis added).

4        Congress passed this statute after a century of Supreme Court jurisprudence that precisely

5   defined these terms in the venue context.  For example, the Supreme Court stated, that for venue

6   purposes, an alien is "assumed not to reside in the United States."  *See Galveston, H. & S.A. Ry.*

7   *Co. v. Gonzales*, 151 U.S. 496, 506-07 (1894).  Building off this explanation, numerous other

8   courts summarily denied venue to aliens based on residency.  *See Arevalo-Franco v. INS*,

9   889 F.2d 589, 590 (5th Cir. 1990) ("Federal courts have interpreted [§ 1391] to deny venue to

10  aliens, holding that for purposes of venue, aliens are not residents of *any* district despite where

11  they might live.") (emphasis in original); *Williams v. United States*, 704 F.2d 1222, 1225 (11th

12  Cir. 1983) ("An alien, for purposes of establishing venue, is presumed by law not to reside in any

13  judicial district of the United States regardless of where the alien actually lives."); *Ou v.*

14  *Chertoff*, No. 07-cv-3676, 2008 WL 686869, at *2 (N.D. Cal. Mar. 12, 2008); *Li v. Chertoff*, No.

15  08-cv-3540, 2008 WL 4962992, at **2-3 (N.D. Cal. Nov. 19, 2008); *Elmalky v. Upchurch*, No.

16  06- cv-2359, 2007 WL 944330, at *7 (N.D. Tex. Mar. 28, 2007); *Wilson v. Wilson-Cook*

17  *Medical, Inc.*, 720 F. Supp. 533, 539 (M.D.N.C. 1989); *Fleifel v. Vessa*, 503 F. Supp. 129, 130

18  (W.D. Va. 1980).

19        Before Congress passed § 1391(c)(1), courts were divided on whether the Supreme

20  Court's statement applied to both resident and non-resident aliens (a distinction that did not exist

21  in the 1890s, as it is understood today) or only applied to non-resident aliens.  This was largely a

22  product of inconsistencies in how resident aliens were treated for diversity jurisdiction versus

23  venue determinations.  In *Ou v. Chertoff*, plaintiffs sued officers of the United States to

24  determine whether plaintiffs were entitled to "travel documents."  *Ou*, 2008 WL 686869, at *1.

25  The court noted the "basic venue principle that an alien is presumed not to reside in any district,"

26  then held that principle also applied to "permanent resident aliens."  *Id.* at *2-3 (quotations

27  omitted).  The court found that a permanent resident could not establish residency any more than

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a non-permanent resident. *Id.* at *2 ("[W]hen Congress intends to distinguish between categories of aliens, or to allow aliens to bring an action in the district of their residence, Congress has expressly done so."); *see also Li*, 2008 WL 4962992, *2-3 (holding same).

Conversely, in *Gu v. Napolitano*, a different Northern District of California court disagreed and found that while there might be a "presumption" that "resident aliens" did not reside in a district, "the Supreme Court neither held nor implied that the presumption cannot be rebutted." *Gu v. Napolitano*, No. 09-cv-2179, 2009 WL 2969460, at *2 (N.D. Cal. Sept. 11, 2009); *Kumar v. Mayorkas*, No. 12-cv-06470, 2013 WL 5313718, at **3-4 (N.D. Cal. Sept. 23, 2013) (finding that "as an alien lawfully admitted for permanent residence in the United States," plaintiff could establish residency). But even as the courts debated whether an LPR could establish residency, no court went so far as to hold that a non-resident alien could do so.

Against this debate, and recognizing inconsistencies between how diversity jurisdiction and venue treated an LPR, Congress amended 28 U.S.C. § 1391 to specifically provide venue for those "lawfully admitted for permanent residence in the United States" based on domicile. 28 U.S.C. § 1391(c). Congress's specific inclusion of that narrow class necessarily works to the exclusion of all other categories of aliens—including Plaintiffs. Congress knew of and intended to modify the long-standing rule to allow (and only allow) "lawfully admitted" aliens to claim residency. *See Abuelhawa v. United States*, 556 U.S. 816, 821 (2009) ("As we have said many times, we presume legislatures act with case law in mind…."). And Congress did so in order to treat LPR aliens the same for purposes of venue and diversity. "This is a salutary change. Since 1988, § 1332(a)(2) has defined ***permanent resident aliens*** as citizens of the states in which they are domiciled for purposes of diversity of citizenship jurisdiction. It made little sense not to do the same regarding their residence for venue purposes." Wright et al., Federal Practice and Proc., 14D Fed. Prac. & Proc. Juris. § 3810 (4th ed. April 2020) (emphasis added).

The statute is plain on its face, and no further analysis is warranted. Nevertheless, should confusion arise, the legislative history is clear that Congress intended that only aliens lawfully admitted for permanent residence could establish residency: "An alien can obtain a 'lawful

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   domicile' in the United States **only if** he or she has the ability under the immigration laws to

2   form the intent to remain in this country indefinitely." H.R. Rep. 112-10, at 33 n.16 (Feb. 11,

3   2011) (emphasis added). Plaintiffs cannot currently form a lawful intent to remain in this

4   country indefinitely because both are subject to removal proceedings after their illegal entries.

5          Other district courts have denied venue based on § 1391(c) on facts very similar to those

6   present in this case. In *Najera v. United States*, the plaintiff brought an FTCA claim based on

7   allegations that CBP and ICE treated him poorly and improperly executed a removal order

8   against him. *Najera v. United States*, No. 16-cv-459, 2016 WL 6877069, at *2 (E.D. Va. Nov.

9   22, 2016). Based on § 1391(c)(1), and over plaintiff's objections, the court found "[a]lthough

10  Plaintiff alleges that he resides in Woodbridge, Virginia … he is a citizen of Honduras and is,

11  therefore, an alien for purposes of venue." *Id.* at *6. The court held that the plaintiff's claims

12  were improperly filed in the Eastern District of Virginia and transferred the case. *Id.* at *7; *see*

13  *also J.P. v. Sessions*, No. 18-cv-06081, 2019 WL 6723686, at *43 (C.D. Cal. Nov. 5, 2019)

14  ("Courts have determined that non-citizens, including those who [are] not lawful permanent

15  residents, do not reside in any district of the United States for purposes of venue."); Wright et

16  al., FEDERAL PRACTICE AND PROCEDURE § 3810, ("Contrary to prior law, now **certain** aliens—

17  those lawfully admitted to the United States for permanent resident status—are considered to

18  'reside' in a judicial district for venue purposes.") (emphasis added).

19         Two other courts have reached an opposite result, but both ignored the actual language of

20  § 1391 and treated the restrictive clause as "merely an illustrative example of 'natural persons.'"

21  *Alvarado v. United States*, No. 16-cv-5028, 2017 WL 2303758, at *3 (D.N.J. May 25, 2017); *see*

22  *also Flores v. United States*, 108 F. Supp. 3d 126, 131 (E.D.N.Y. 2015). This reasoning is

23  faulty. No example is needed to understand the phrase "natural persons." And to include a

24  narrow class of aliens as an example of "natural persons" is an odd choice—especially

25  considering the caselaw and statutory issues that informed the 2011 amendment. Such a reading

26  only creates confusion where none otherwise exists. Finally, if "natural persons" was ambiguous

27  enough to need illustration, then a review of the legislative history would clarify it does not

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   apply to non-resident aliens.  But both courts ignored the pertinent aspects of that history.  The

2   *Alvarado* court focused on inapposite sections of the legislative history, one that discussed a

3   broader issue of whether residence and domicile were interchangeable generally as to citizens, as

4   opposed to the text specifically concerning the phrase at issue, which "foreclose[d] the

5   possibility that an undocumented alien would be regarded as a domiciliary of the United States

6   for venue purposes."  H.R. Rep. 112-10, at 33 n.16 (Feb. 11, 2011).  And, *Flores* focused on a

7   U.S. Citizenship and Immigration Services memorandum, which was not on point and could not

8   alter congressional intent, even if it were.  *Flores*, 108 F. Supp. 3d at 131.

9           Here, Plaintiffs have not (and cannot) allege that they are now or ever have been lawfully

10   admitted for permanent residency.  Plaintiffs may still pursue their claims but must do so where

11   venue is proper—either in the Southern District of New York or the Southern District of Texas—

12   where the alleged events occurred.  28 U.S.C. § 1402(b).[3]  At the time of filing, Plaintiffs' case

13   was one of seven similar matters based on similar allegations (mostly FTCA actions) and filed in

14   various venues around the United States.  Five of those cases were brought based on where the

15   acts or omissions allegedly occurred.  Bohl Decl., ¶ 8.  In one, *K.O. v. Sessions*, the court

16   transferred the case after it found it did not have personal jurisdiction over the named defendants

17   and that venue was improper in that district under § 1391(e).[4]  In *R.Y.M.R. v. United States*,

18   No. 20-cv-23598 (S.D. Fl.), the United States opted to maintain the matter in that district.  All

19   other similar cases are brought in jurisdictions where the alleged acts or omissions occurred.  In

20   particular, *D.J.C.V. v. United States*, No. 20-cv-5747 (S.D.N.Y.) also involves allegations that a

21   minor child was mistreated at a government-contracted facility located in that district after

22   separation at the border.  Bohl Decl., Ex. F, ¶ 14 ("Plaintiff's son, D.J.C.V., was also detained in

23   this District by ORR through Lutheran Social Services of New York … in the Bronx, New

24

25   [3] Upon finding that venue is improper, the Court may either dismiss or transfer the action.  28 U.S.C. § 1406(a); *See,
     e.g.*, *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).  The United States does not seek dismissal here; such a
26   result would offend the interests of justice.
     [4] *K.O.* involves similar facts, but Plaintiffs originally brought *Bivens* claims, and not FTCA claims until they
27   attempted to amend their complaint.

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

York.").  Therefore, that district already has a matter pending that alleges similar facts.

Section 1391(c)(1) is plain.  For "all venue purposes" only an "alien lawfully admitted for permanent residency" can be said to reside where he or she is domiciled and aliens not lawfully admitted for permanent residency cannot.  In other words, someone cannot be a resident of a place where they cannot legally reside.  "[L]iberalized choice of venue does not mean infinite choice of venue.  To hold otherwise would render the statute—which enumerates only three categorical ways to properly lay venue—meaningless.  'The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction.'"  *Ctr. for Biological Diversity v. Pirzadeh*, No. 09-cv-1719, 2010 WL 11691840, at *3 (W.D. Wash. Apr. 28, 2010) (quoting *Olberding v. Illinois Cent. R.R. Co.*, 346 U.S. 338, 340 (1953)).

Because Plaintiffs cannot establish venue in this District based on their residency alone, the Court should transfer this matter to one of the districts where the alleged torts occurred.

2.  <u>Plaintiffs Do Not Appear to be Domiciled in this District</u>

Plaintiffs will likely argue that § 1391(c)(1) only uses "permanent legal resident" as an example to clarify the meaning of "natural person."  Besides the illogic of adding a confusing example to the otherwise well-known and well-understood phrase "natural person," this argument would ignore the long line of caselaw that considered "natural person" to be equivalent to United States citizens.  *See Shaw v. Quincy Mining Co.*, 145 U.S. 444, 449 (1892) (equating natural persons with "citizens" of the state or jurisdiction).  This argument would also ignore that, as a legal matter, Plaintiffs, considering their temporary and illegal status, cannot make Washington State their domiciliary.  *See Park v. Barr*, 946 F.3d 1096, 1098 (9th Cir. 2020) (finding that "a B-2 nonimmigrant whose lawful status had lapsed, was precluded from establishing lawful domicile in California by operation of federal law").

//

//

//

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Besides these purely legal issues, Plaintiffs also face significant factual problems.

2    Plaintiffs only allege that they reside in Seattle.  Compl., ¶ 14.  But residency alone is

3    insufficient; Section 1391(c) requires Plaintiffs to establish domiciliary.  "A person's domicile is

4    her permanent home, where she resides with the intention to remain or to which she intends to

5    return.  A person residing in a given state is not necessarily domiciled there, and thus is not

6    necessarily a citizen of that state." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir.

7    2001) (internal citation omitted).  There is no dispute that Washington State would at least

8    represent a change of domicile for both Plaintiffs, who are both citizens of Guatemala.  Compl.,

9    ¶¶ 15, 16.  Any change of domicile requires more than physical presence at the new location, it

10   also requires ***evidence*** of an intent to remain at the new location indefinitely.  *Lew v. Moss*,

11   797 F.2d 747, 750 (9th Cir. 1986); *Christian v. Regence Bluecross Blueshield of Oregon*,

12   No. 20-cv-5445, 2020 WL 5045157, at *3 (W.D. Wash. Aug. 3, 2020), ("Change in domicile

13   requires both physical presence at the new location and evidence of intent to remain

14   indefinitely."), report and recommendation adopted sub nom., 2020 WL 5038733 (W.D. Wash.

15   Aug. 25, 2020).  Until a new domicile is established, a plaintiff's previous domicile controls.  *Id.*;

16   *Barber v. Varleta*, 199 F.2d 419, 423 (9th Cir. 1952).

17   There is no evidence of any intent by Plaintiffs to remain in Washington State

18   permanently.  On the other hand, there are multiple pieces of evidence establishing Plaintiffs

19   intended to move to the Philadelphia area, albeit not permanently.  First, when ELA was

20   apprehended at the border in 2018, he told the CBP officer he intended to move to Philadelphia

21   to find work and then he would return home to Guatemala after a period of three years:

22   Q.  What was your purpose of your illegal entry into the United States?

23   A.  To work and reside in Philadelphia, Pennsylvania.

24   Q.  Where were you going?

25   A.  Philadelphia, Pennsylvania.

26   Q.  How long did you intend on staying there?

27   A.  3 years.

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Bohl Decl., ¶ 3, Ex. A, p. 2; *id.* at p. 4 (stating reason he left was "to work and reside [in]

2    Philadelphia, Pennsylvania.").  OLC also said that their destination was Philadelphia, where he

3    had immediate family and a friend, with whom he made telephone contact.  Bohl Decl., ¶ 4, Ex.

4    B, p. 3 ("Location of immediate family: Philadelphia, PA[.]"); *id.* ("[S]ubject was able to contact

5    his friend…in Philadelphia, PA…Subject was able to speak with his Friend[.]").   Moreover,

6    while ELA alleges that CBP failed to document a credible fear claim in 2018, OLC did make

7    such a claim and during his interview, he stated that the reason he and his father left Guatemala

8    was to "live with my family in the United States."  Bohl Decl., ¶ 5, Ex. C, p. 3.  The only family

9    listed was that in Pennsylvania.

10           Second, the United States provided ELA the option of being reunited with his son, OLC,

11   before his removal.  But in a signed declaration, legal counsel confirmed that after speaking with

12   ELA, he "made a final, affirmative, knowing, and voluntary decision to waive reunification with

13   their child in the country of origin and to allow their child to remain in the United States."  Bohl

14   Decl., ¶ 6, Ex. D, p. 3.  One could infer from ELA's affirmative decision to leave his son at

15   Lincoln Hall, New York, that ELA intended to return shortly to the Northeast to join OLC and

16   other family there, as he originally intended.

17           Third, nothing in the record demonstrates that Plaintiffs have any close ties to

18   Washington State.  As demonstrated above, Plaintiffs only family in the United States appears to

19   be in Philadelphia.  Additionally, in the declaration where ELA waived reunification with OLC,

20   he stated that OLC's sponsor was his maternal cousin.  *Id.*  It is likely that this is the family OLC

21   spoke of being in the Philadelphia area.  The rest of their family remains in Guatemala, including

22   ELA's wife and four of his children, where ELA had originally stated he intended to return.

23   Bohl Decl., ¶ 7, Ex. E, pp. 2-3, *see also id.* at p. 4 ("Q.  Do you have any other family in

24   Guatemala?  A.  Yes, I have lots of family.").  ELA's only connection to Washington appears to

25   be his immigration services sponsor.  *Id.* at p. 4.  That by itself is not a significant tie to suggest

26   he intends to remain here beyond his immigration proceedings, let alone indefinitely.

27

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Fourth, after ELA's second entry in 2019, CBP again questioned ELA about his reentry

2  and intentions.  And ELA again confirmed that one of his objectives was to find work.  Bohl

3  Decl., Ex. E, p. 4 ("I want to reunite with my son, and work because in Guatemala I don't make a

4  decent wage.").  Considering (1) Plaintiffs' repeated desire to come to the United States

5  (specifically Philadelphia) to find work, (2) repeated statements that their only family and

6  contacts are in Philadelphia, and (3) their lack of any substantial ties to Washington State, it is

7  highly likely Plaintiffs do not intend to make Washington State their permanent home.  At the

8  very least, there is no evidence to support such a finding.

9    The analysis in *Little v. Grant Cty. Hosp. Dist. #1*, No. 18-cv-00292, 2020 WL 1433526,

10  at *2 (E.D. Wash. Mar. 23, 2020) is instructive.  There, the plaintiffs were residing in

11  Washington State but brought an action against a Washington State hospital claiming diversity

12  jurisdiction based on their being domiciled in Montana, their previous home.  The district court

13  agreed because there was no evidence that Washington State was to be the plaintiffs' permanent

14  home: "The evidence is insufficient to conclude that Plaintiffs intended to make Washington

15  their home indefinitely.  At best, it appears they wanted to give Washington a try to see if they

16  could make a new life for themselves.  But, being willing to try a new location does not equate

17  with intending to stay in Washington permanently."  *Id.*

18    Here, too, at most there is an implication that Plaintiffs are willing to try Seattle as a

19  home, but Plaintiffs do not allege, nor is there any evidence to support, an intention to make this

20  their ***permanent*** home.  At best, the evidence shows that they are here because of this litigation

21  and because their immigration proceedings are here.  While they may be exploring their options

22  and giving Washington a try—that does not equate with evincing a desire to stay here forever.

23  Because there is no evidence to show that Plaintiffs are domiciled in Washington State, the Court

24  should transfer for lack of venue.  At the very least, if the Court does not transfer the matter, then

25  the United States would ask that the Court stay the matter and allow for limited discovery

26  regarding Plaintiffs' domicile.

27

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

3.   <u>The Southern District of Texas is Clearly the More Convenient Forum</u>

The United States additionally moves to transfer this case to the Southern District of Texas "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a).[5]

Both steps of the § 1404(a) analysis are satisfied.  Plaintiffs could have originally brought this suit in the Southern District of New York or the Southern District of Texas.  Plaintiffs allege that their separation caused the intentional infliction of emotional distress.  First Claim for Relief, Compl., ¶ 84.  That separation occurred in the Southern District of Texas.  Plaintiffs allege that the United States' prosecution of ELA pursuant to 8 U.S.C. § 1325 was an abuse of process.  Second Claim for Relief, Compl., ¶ 90.  That prosecution occurred in the Southern District of Texas.  Plaintiffs allege that their separation constituted actionable negligence.  Third Claim for Relief, Compl., ¶ 95.  Again, that separation occurred in the Southern District of Texas.  Finally, Plaintiffs allege that OLC suffered while in Lincoln Hall's custody due to the United States' negligence.  Fourth Claim for Relief, Compl., ¶ 100.  OLC's detention at Lincoln Hall occurred in the Southern District of New York.

The Southern District of Texas (1) is where most relevant agreements were negotiated and executed, (2) is most familiar with the governing law, (3) is where the parties have the most contacts, (4) will cost less to litigate, and (5) affords far greater ease of access to sources of proof.  On the other hand, this District has only minimal, if any connection, with this matter.  While Plaintiffs are located here, that factor should be given minimal weight since none of the facts at issue occurred here.

---

[5] The Court could transfer this matter to either the Southern District of New York or the Southern District of Texas because a substantial portion of the facts occurred in both districts.  *J.P. v. Sessions*, 2019 WL 6723686, at *44 (C.D. Cal. Nov. 5, 2019) (finding that because named plaintiff was an illegal alien venue could not be established by residence, but the court did have venue because a "substantial part of the events" took place in that district, and that "it is not required that the events" in one district "predominate over other districts").  After meeting and conferring about this motion, Plaintiffs stated that if the case had to be transferred, they would prefer transfer to the Southern District of New York.  The United States does not oppose transfer to either district.  The United States only suggests transfer to the Southern District of Texas because, between that forum and the Southern District of New York, the former is clearly more convenient.  That is where the separation occurred, ELA's detention was there, and almost all relevant government witnesses are located there.

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

    a.    <u>Plaintiffs Could Have Brought this Action in the Southern District of Texas.</u>

The first step asks whether a plaintiff could have originally brought this action in the transferee district.  Here, Plaintiffs could have brought this matter in the Southern District of Texas because a substantial portion of the operative facts occurred in Texas, including three of the four causes of action.  28 U.S.C. § 1402(b) (stating that an FTCA action "may be prosecuted…wherein the act or omission complained of occurred"); Compl., ¶¶ 19-47, (describing arrest in McAllen, Texas; detention and separation at facilities in Texas; and removal from Texas to Guatemala).

    b.    <u>The Convenience and Interests of the Parties Favor Transfer Because Most Operative Facts Occurred in Southern Texas.</u>

The second step balances the convenience and interests of the parties and both judicial districts.  Here, the convenience of the parties and witnesses clearly favors transfer.  Other than Plaintiffs currently being in Seattle, most other witnesses are located outside this District.  The alleged conduct concerns multiple CBP agents, all located in Texas, and events—including Plaintiffs' arrests, detentions, and separation—that all occurred in Southern Texas.  The complaint does not name any individual officers but repeatedly alleges improper conduct by many different government officials throughout the arrests, separation, and detention.

Factor one ("location where the relevant agreements were negotiated and executed") favors transfer because to the extent there are any relevant "agreements" between Plaintiffs and the United States as it relates to their 2018 detention and separation, those agreements, and the circumstances by which they were created, occurred in Texas.  Factors four ("respective parties' contacts with the forum") and eight ("ease of access to sources of proof") clearly favor transfer for the reasons stated above.  Factor five ("contacts relating to the plaintiff's cause of action in the chosen forum") favors transfer because there are no contacts relating to Plaintiffs' causes of action that are in this forum other than Plaintiffs themselves.

//

//

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Factor six ("differences in cost of litigating in the two forums") also favors transfer.  It

2   will cost much more to litigate this case here than it would in the Southern District of Texas.

3   The United States anticipates that it will have to call a significant number of witnesses—

4   including numerous CBP officials and officers—most of whom are in Southern Texas.

5   Preparing, flying, and accommodating all these individuals here will be a substantial financial

6   burden.  *Nordquist v. Blackham*, No. 06-cv-5433, 2006 WL 2597931, at *4 (W.D. Wash. Sept.

7   11, 2006) ("Generally, litigation costs are reduced when venue is located near most of the

8   witnesses expected to testify or be deposed….Here, all potential witnesses and parties, save one,

9   reside in northern Texas.  Accordingly, this factor favors transfer.") (internal citation omitted).

10  The southern Texas border is relatively remote, and not accessible by direct flights to Western

11  Washington.

12  Factor seven ("the availability of compulsory process") is neutral for transfer to Texas.  If

13  anything, it would favor transfer to the Southern District of New York because that is where

14  Lincoln Hall is located.  Lincoln Hall is not a government facility and the employees that

15  allegedly abused OLC are not government employees.  But should those witnesses need to

16  testify, New York is closer to the Southern District of Texas than it is to this District.

17  Factor two (which state is "most familiar with the governing law") favors transfer

18  because three of Plaintiffs' four torts sound in Texas state common law, which is where those

19  alleged torts occurred.  *Hansen v. Combined Transp., Inc.*, No. 13-cv-1298, 2013 WL 5969863,

20  at *2 (W.D. Wash. Nov. 7, 2013) ("[B]ecause plaintiff brings more claims under Oregon law

21  than Washington law, this factor favors transfer to Oregon."); *Blackham*, 2006 WL 2597931, at

22  *3 ("It is undisputed that the choice of law (Texas) was contractually agreed by the parties.

23  Accordingly, the choice of law factor favors transfer to Texas.").  The final cause of action

24  occurred in New York and would be under New York state law.

25  //

26  //

27  //

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The only factor that favors maintaining this action in this District is Plaintiffs' choice of forum.[6]  Deference to a plaintiff's chosen venue is substantially reduced, however, where that locale lacks any real connection to the activities alleged in the complaint.  *Amazon.com*, 404 F. Supp. 2d at 1260; *Hansen*, 2013 WL 5969863, at *2 ("[P]laintiff's claims against defendants do not arise out of defendants' contacts in Washington.  Because the only connection between this lawsuit and the Western District of Washington is that the plaintiff lives in Renton, WA, the Court will afford only slight deference to the plaintiff in finding that this factor weighs against transfer."); *Nordquist*, 2006 WL 2597931, at *4 ("A plaintiff's choice of forum is given much less weight when the forum lacks any significant contact with the activities alleged in the complaint.  As previously noted, the business is located in Texas, the Defendants reside in Texas, and the Plaintiff resided in Texas while operating the business and during significant negotiations of the sale.  This factor weighs heavily in favor of transfer.").  The United States does not mean to diminish the cost to Plaintiffs to travel to the Southern District of Texas for an eventual trial.  On balance, however, the costs of a multitude of witnesses traveling here heavily outweighs Plaintiffs costs to travel there.

> ### c.   <u>The Southern District of Texas Has a Greater Local Interest in this Matter.</u>

Lastly, the interests of justice also favor transfer.  The allegations in Plaintiffs' complaint focus on many different issues.  Likely, the most important of which will be issues concerning the former zero tolerance policy.  That issue is of national importance and therefore weighs equally in any given district.  But Plaintiffs' allegations also focus significantly on the behavior of CBP agents operating in Southern Texas and the conditions of a CBP facility in Southern Texas.  The Southern District of Texas has the greater interest in keeping the people located in that District safe from alleged government wrongdoing.  *See, e.g., Canal A Media Holding, LLC*

---

[6] Plaintiffs' choice is entitled to less deference if Plaintiffs do not reside in the forum where the action was commenced.  As matter of law, Plaintiffs do not "reside" here, although the United States appreciates that Plaintiffs are allegedly physically present in this District, and as a matter of convenience, this factor should be afforded some weight.  Nevertheless, it cannot trump the convenience of all other factors—otherwise, a plaintiff could always and summarily defeat any transfer motion merely by relying on his or her physical presence.

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*v. United States Citizenship & Immigration Servs.*, No. 17-cv-6491, 2018 WL 7297829, at *4
(C.D. Cal. Sept. 30, 2018) (finding that the transferee district "has a great interest in protecting
its citizens from the unreasonable actions of a [government agency]") (internal citations and
quotations omitted).  It is also more in the interests of justice that a Texas court determines
whether law enforcement agents stationed in Texas comported with the standards of Texas law,
just as it would be more just for this Court to say whether Washington State law enforcement
officers behaved within the strictures of our state's law.

On balance, these factors weigh in favor of transfer.  Plaintiffs' choice of forum should
only be given minimal weight because none of the alleged conduct occurred here.  Therefore, the
United States requests that the Court transfer this matter to the Southern District of Texas.[7]

**B.  Plaintiffs' Abuse of Process and Negligence-Family Separation Claims Should be Dismissed Pursuant to Rule 12(b)(6)**

If the Court does not transfer this case, it should still dismiss Plaintiffs' Second and Third
Claims for Relief because Plaintiffs have failed to allege sufficient facts to state a claim
regarding abuse of process and negligence based on family separation.

Plaintiffs' claim for abuse of process (Second Claim) should be dismissed with prejudice
because they fail to allege that the United States improperly charged ELA under 8 U.S.C. § 1325.
Plaintiffs' claim for negligence based on family separation (Third Claim) should be dismissed
without prejudice because they do not allege any specific facts whatsoever.  Its allegations are
unadorned recitals of the elements of negligence.[8]

---

[7] The United States would not object, however, if the Court found that the Southern District of New York was also
more clearly convenient, in part based on the presence of Lincoln Hall and the likelihood of relevant third-party
witnesses being located in that venue.

[8] Additionally, the United States has serious concerns that the Court lacks subject matter jurisdiction over certain
claims, in particular whether the Discretionary Function and Due Care Exceptions bar Plaintiffs' negligence claims
and whether the independent contractor exception bars Plaintiffs' allegations that Lincoln Hall mistreated OLC
because Lincoln Hall is a non-government entity.  These issues, particularly the last, appear to involve some amount
of factual discovery.  The United States believes it is prudent, therefore, to collect the relevant information before
bringing an additional motion.

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    1.   Plaintiffs Cannot Show an Abuse of Process Because ELA Was Properly Charged
         with Illegal Entry

This Court should dismiss Plaintiffs' Second Claim for Relief because Plaintiffs have

failed to allege sufficient facts to state a claim regarding abuse of process.  Plaintiffs contend that

Defendant's employees abused legal processes within their control when they designated OLC

an unaccompanied minor by relying on ELA's prosecution under 8 U.S.C. § 1325 to justify the

separation of ELA and OLC.  Compl., ¶¶ 88-89.  But Plaintiffs never allege (nor could they) that

ELA made a legal entry; therefore, the government properly charged ELA.  They only allege that

the reasons for charging ELA were improper.  An improper motive, by itself, is not an abuse of

process.

"In multistate tort actions brought under the FTCA, courts are required 'to look in the

first instance to the law of the place where the [tortious] acts … took place[,]', not where their

operative effects were felt." *Appolon v. United States*, No. 16-cv-2275, 2017 WL 3994925, at

*10 (E.D.N.Y. Sept. 7, 2017) (quoting *Richard v. United States*, 369 U.S. 1, 10 (1962)).

Accordingly, Texas law applies to Plaintiffs' abuse of process claim.  To prevail in an abuse of

process claim under Texas law, "a plaintiff must show that (1) the defendant made an illegal,

improper, or perverted use of the process, a use neither warranted nor authorized by the process;

(2) the defendant had an ulterior motive or purpose in engaging in such misuse of process; and

(3) the misuse of process resulted in damage to the plaintiff." *Landry's, Inc. v. Animal Legal*

*Defense Fund*, 566 S.W.3d 41, 63 (Tex. App. 2018) (internal quotation marks and citation

omitted).

Here, Plaintiffs do not allege that ELA's prosecution under 8 U.S.C. § 1325 for his illegal

entry into the United States was unwarranted or unauthorized by law, nor can they.  Compl., ¶

38.  On that basis alone, Plaintiffs fail to allege sufficient facts to show abuse of process.  It is of

no import that Plaintiffs allege Defendant had an ulterior motive, namely, to designate OLC as

an unaccompanied minor, because Plaintiff was prosecuted for the purpose intended by the

statute (improper entry by alien).  *See Andrade v. Chojnacki*, 65 F. Supp. 2d 431, 469 (W.D. Tex.

1999) ("Even assuming for the sake of argument that the government had an improper motive in

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

prosecuting [defendant], the process itself was used as intended—[defendant] and the others were criminally prosecuted."); *see also Blackstock v. Tatum*, 396 S.W.2d 463, 468 (Tex. App. 1965) ("[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intention"); *Crear v. US Bank, NA*, No. 14-cv-3136, 2015 WL 12731741, at *2 (N.D. Tex. May 26, 2015) ("When the process is used for the purpose for which it is intended, even though accomplished by an ulterior motive, no abuse of process has occurred.") (citation omitted); *In re Burzynski*, 989 F.2d 733, 739 (5th Cir. 1993) ("An ulterior motive does not supplant the first element.").

Therefore, Plaintiffs' abuse of process claim must be dismissed with prejudice.

2. <u>Plaintiffs' Negligence Claim Regarding Family Separation Should be Dismissed Pursuant to Rule 12(b)(6)</u>

Plaintiffs' Third Claim for Relief, referred to as "Negligence – Family Separation," should be dismissed without prejudice.  Compl., ¶¶ 93-97.  This claim is nothing more than incorporating the previous paragraphs and then reciting the bare elements of a negligence claim. In particular, Plaintiffs never allege what actual duty the United States owed to Plaintiffs or how any employee failed to act with ordinary care in respect to that duty.  There are no factual allegations that discuss any duty owed whatsoever.  *Washington v. Tyson Foods, Inc.*, No. 17-cv-126, 2018 WL 3603092, at *2 (E.D. Tex. June 27, 2018) ("The threshold inquiry in a negligence case is whether a duty exists, which is a question of law for the court to decide from the facts of the case."); *Shelby v. Wells Fargo Bank, N.A.*, No. 18-cv-416, 2018 WL 3979864, at *7 (N.D. Tex. July 23, 2018) ("Even if this allegation is taken as true, the petition still fails to state a negligence claim as a matter of law because there are no allegations that the Bank Defendants owed him a duty of care outside of any contractual obligations.").  The word duty only appears in these statements reciting the elements of negligence.  Compl., ¶¶ 94, 95.  Without knowing what actual duty is allegedly owed, it is impossible to know if the United States violated a standard of care.  In fact, the complaint makes plain that Plaintiffs believe that the United States' separation of families was purposefully intended and anything but negligent.  Compl., ¶2.

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 20

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Plaintiffs must provide more than a statement that negligence can be found somewhere in the

2   preceding 92 paragraphs.  *See Gonzalez v. United States*, No. 16-cv-1494, 2018 WL 1597384, at

3   *6 (E.D.N.Y. Mar. 31, 2018) ("The complaint fails to specify which of defendants' acts plaintiff

4   contends were negligent—it instead merely "repeats and realleges every allegation set forth"

5   previously in the complaint, and, in substance, asserts that negligence can be found somewhere

6   in those allegations.") (internal citations omitted).

7         Second, the Texas Supreme Court has consistently held that most relationships create no

8   duty to avoid causing mental anguish absent a special relationship.  Because Plaintiffs do not

9   allege a special relationship and do not allege physical injury as a result of the family separation,

10  damages are not recoverable under Texas law.  *See Temple-Inland Forest Products Corp. v.*

11  *Carter*, 993 S.W.2d 88, 91 (Tex. 1999) ("[i]t has been established for over a century that '[a]

12  person who is placed in peril by the negligence of another, but who escapes without injury, may

13  not recover damages simply because he has been placed in a perilous position.  Nor is mere

14  fright the subject of damages.'") (citation omitted); *Villafuerte v. United States*, No. 16-cv-619,

15  2017 WL 8793751, at *11 (S.D. Tex. Oct. 11, 2017) ("Texas law requires that a plaintiff show

16  some physical injury in order to bring an ordinary negligence claim."); *Strojnik v. 1530 Main LP*,

17  No.19-cv-1326, 2020 WL 981031, at *6 (N.D. Tex. Feb. 28, 2020) ("[plaintiff] has not pleaded

18  facts to show this case is one in which it is permissible to bring a negligence claim in the absence

19  of physical injury").  Therefore, Plaintiffs' Third Claim for Relief should be dismissed for failure

20  to state a claim.

## V.   CONCLUSION

22        For all of the foregoing reasons, the United States respectfully requests that the Court

23  transfer this case, or alternatively, stay the matter and allow discovery on the issue of where

24  Plaintiffs are domiciled.

25  //

26  //

27  //

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 21

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    If the Court finds that venue is proper and convenient, however, then the United States

2  respectfully requests that the Court dismiss Plaintiffs' abuse of process claim with prejudice and

3  dismiss Plaintiffs' negligence-family separation claim without prejudice.

4    DATED this 19th day of January, 2021.

5

6                                     Respectfully submitted,

7                                     BRIAN T. MORAN
                                      United States Attorney
8

9                                     *s/ Nickolas Bohl*
                                      _____
10                                    NICKOLAS BOHL, WSBA # 48978

11                                    *s/ Kristen R. Vogel*
                                      _____
                                      KRISTEN R. VOGEL, NYBA # 5195664
12                                    Assistant United States Attorneys
                                      Western District of Washington
13                                    United States Attorney's Office
                                      700 Stewart Street, Suite 5220
14                                    Seattle, Washington 98101-1271
                                      Phone: 206-553-7970
15                                    Email: nickolas.bohl@usdoj.gov
                                      Email: kristen.vogel@usdoj.gov
16

17

18

19

20

21

22

23

24

25

26

27

UNITED STATES' MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ - 22

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970