District Judge Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

E.L.A. and O.L.C.,

　　　　Plaintiffs,

　　v.

UNITED STATES OF AMERICA,

　　　　Defendant.

Case No. 2:20-cv-1524-RAJ

**RESPONSE TO DEFENDANT'S MOTION TO TRANSFER AND PARTIAL MOTION TO DISMISS**

Note on Motion Calendar: February 12, 2021

**ORAL ARGUMENT REQUESTED**

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS
Case No. 2:20-cv-1524-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

# INTRODUCTION

Plaintiffs E.L.A. and O.L.C. are a father and son who were victims of the Trump Administration's cruel and unlawful policy of forcibly separating families at the southern border—a policy that was adopted *for the purpose* of traumatizing and harming those children and parents. From the highest levels of government down to Customs and Border Protection (CBP) and Immigration and Customs Enforcement (ICE) officers in the field, Defendant and its employees sought to inflict extreme emotional distress and other harms and intended to use the trauma of family separations to deter asylum seekers. To do so, as Plaintiffs explained in their complaint, Defendant's employees prosecuted E.L.A. for illegal entry under Defendant's "Zero Tolerance" policy, and then used that prosecution to justify separating him from O.L.C. for months—something the prosecution neither required nor authorized. Defendant's employees then detained Plaintiffs in separate facilities thousands of miles apart after erroneously deeming O.L.C. to be an "unaccompanied" minor. Defendant also forcibly transferred O.L.C. to Lincoln Hall Boy's Haven, a boys' home in New York state, while deporting E.L.A. to Guatemala. They were separated for the next nine months, causing extreme emotional and other harms.

Plaintiffs filed suit in this Court asserting claims under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, to seek compensation for the horrific treatment they experienced. In response, Defendant has now moved to transfer this case to the Southern District of Texas (or, failing that, to the Southern District of New York) and dismiss two of Plaintiffs' four claims. According to Defendant, Plaintiffs cannot file suit in this district because as asylum applicants they are not "natural persons" within the meaning of 28 U.S.C. § 1391. Defendant also asks this Court to order a discretionary transfer, even if venue is proper. Defendant's arguments are nothing more than transparent efforts to deny Plaintiffs meaningful access to the courts. As indigent individuals without access to any other district court besides the Western District of Washington, where they

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

reside, this suit in this Court provides their only opportunity to seek redress and accountability for Defendant's egregious actions.

First, venue is proper in this District under 28 U.S.C. § 1391(c)(1) because Plaintiffs reside here. Defendant's argument that Plaintiffs cannot establish residency as a matter of law in any judicial district ignores the plain language of the venue statute. It also rehashes a flawed argument that courts have repeatedly rejected in circumstances indistinguishable from those here. Moreover, Plaintiffs present additional evidence to prove that, as alleged in the Complaint, they are domiciled in the District. They thus reside here for purposes of § 1391(c)(1) and are able to establish proper venue.

Notably, in making their argument about where Plaintiffs intend to reside, Defendant flatly misrepresents the nature of E.L.A. and O.L.C.'s separation, attempting to paint their forced and involuntary nine-month separation as a product of E.L.A.'s choice "before his removal." Dkt. 15 at 12. To the contrary, as stated in his complaint, "[i]n July 2018, after a month of separation, U.S. government officials told E.L.A. that he was about to be reunited with his son, but this was a cruel ruse. Instead of taking him to be reunited with O.L.C., officials instead took him to an airport and unlawfully deported E.L.A. to Guatemala." Dkt. 1 ¶ 4. It was only *months after* Defendant unlawfully removed him to Guatemala that E.L.A. was contacted by the court-ordered steering committee formed by the ACLU in the *Ms. L. v. ICE*, No. 3:18-cv-428 (S.D. Cal.) litigation. Even then, he was offered only the Hobson's choice of electing whether his child should stay in the United States or be reunited with him in the country where he risks persecution.

Defendant's other venue argument—that the case should be transferred to the Southern District of Texas—fares no better. Plaintiffs are of very modest means and transfer would not only disregard Plaintiffs' choice of forum but would make it extremely difficult if not impossible for Plaintiffs to move forward with their claims at all. Plaintiffs have significant contacts with this

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 2
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

forum, each with its attendant obligations, including their ongoing immigration court case, E.L.A.'s job, and O.L.C.'s schooling. In addition, the events at issue in this case occurred in New York and Texas and, just as important, stemmed from policies set by government officials in Washington, D.C. Thus, there are witnesses all over the country, and the evidence is not concentrated in any one judicial district. Given these facts and the obvious difference in resources between the parties, there is no justification for transferring this case to the Southern District of Texas.

Finally, the Court should reject Defendant's Rule 12(b)(6) argument that Plaintiffs have failed to state a claim for abuse of process (Second Claim for Relief) and negligence (Third Claim for Relief). As explained below, the Complaint states a claim for abuse of process under Texas law and details the facts that underlie Plaintiffs' negligence claim. Plaintiffs therefore respectfully request that the Court deny the motion and allow this case to be heard on the merits in this District.

## ARGUMENT

### I.  Venue is Proper in the Western District of Washington.

As alleged in the Complaint, venue is proper in the Western District of Washington because E.L.A. and O.L.C. reside in this District. Dkt. 1 ¶ 14. Defendant's argument that, although Plaintiffs live in Seattle, they do not "reside" in this District is wrong on both the law and the facts. As detailed below, other courts have rejected precisely the argument Defendant makes.

### A.  Venue is Proper Where E.L.A. and O.L.C. are Domiciled.

An FTCA action must be brought either "in the judicial district where the plaintiff resides or wherein the act or omission occurred." 28 U.S.C. § 1402(b). Under the venue statute, a person "resides" where they are domiciled:

(c) Residency. For all venue purposes —

(1) a natural person, including an alien lawfully admitted for permanent residence

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 3
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

in the United States, shall be deemed to reside in the judicial district in which that person is domiciled[.]

28 U.S.C. § 1391(c)(1).

The plain text of the venue statute demonstrates that E.L.A. and O.L.C. may establish venue in the Western District of Washington. E.L.A. and O.L.C. are, of course, each a "natural person." *See* Black's Law Dictionary (11th ed. 2019) (a "natural person" is a "human being"); *Rodriguez Alvarado v. United States*, No. CV 16-5028, 2017 WL 2303758, at *2 (D.N.J. May 25, 2017) ("The ordinary meaning of 'natural person' is an individual."). Accordingly, E.L.A. and O.L.C. are deemed to reside where they are domiciled: the Western District of Washington. The Court need not look further than the unambiguous words of the statue to reject Defendant's argument. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003) ("[W]here, as here, the words of the statute are unambiguous, the judicial inquiry is complete.") (internal quotation marks omitted)).

Defendant, however, reads § 1391(c)(1) to categorically exclude noncitizens who are not lawful permanent residents (LPRs) from establishing residency for venue purposes, even though the statute does nothing of the sort. According to Defendant, "Congress's specific inclusion of [LPRs] necessarily works to the exclusion as to all other categories of aliens—including Plaintiff." Dkt. 15 at 7. The statute's text directly counters such a narrow reading. As the Supreme Court has stated, the word "including" is not limiting, and a statute is "not limited to the examples that follow that word." *West v. Gibson*, 527 U.S. 212, 218 (1999); *see also Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) (observing that "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle"); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 132 (2012) ("[T]he word *include* does not ordinarily introduce an exhaustive list. . . . That is the rule both in

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 4
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

good English usage and in textualist decision-making."). The Ninth Circuit has said the same thing. *See, e.g.*, *In re Mark Anthony Constr., Inc.*, 886 F.2d 1101, 1106 (9th Cir. 1989) (citing cases). Under these basic rules of statutory construction, the phrase "including an alien lawfully admitted for permanent residence in the United States" in § 1391(c)(1) is properly read as an illustrative example of the principle that all natural persons can establish venue in the district where they are domiciled.

Other courts have rejected the same argument Defendant makes here and instead found the plain language compels the court to acknowledge all "natural persons" with domicile in the district. For example, in *Flores v. United States*, 108 F. Supp. 3d 126 (E.D.N.Y. 2015), Defendant disputed venue in an FTCA case alleging mistreatment by federal officers in Texas. The plaintiff brought the case in the Eastern District of New York, where she lived. The court found that the statute was "unambiguous on its face," 108 F. Supp. 3d at 131, and that "[a]lienage is not a reason stated in the statute as a basis for finding persons outside its reach," *id*. at 130. The *Flores* court therefore ruled that the noncitizen plaintiff could maintain an FTCA suit concerning events in Texas in New York, where she was domiciled. *Id.* at 131.

The court in *Rodriguez Alvarado* also rejected this same argument regarding the statute's text. Similar to *Flores* and this case, Defendant sought to transfer an FTCA case from New Jersey, where the mother and son plaintiffs lived, to Texas, where they had been apprehended and allegedly mistreated by federal authorities. The court denied the motion to transfer, holding that "[t]he plain text of 1391(c)(1) authorizes *all* non-citizens—regardless of LPR status—to establish residency where they are domiciled." *Rodriguez Alvarado*, 2017 WL 2303758 at *2; *cf. Doe v. United States*, No. 3:16-CV-0856, 2017 WL 4864850, at *2 (M.D. Tenn. Oct. 26, 2017) (considering a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) and finding that plaintiffs, who were seeking asylum, resided in their chosen forum).

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 5
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Defendant's only response to this line of reasoning is to pivot away from the plain language and instead point to the legislative history and 19th-century case law—a response that is unavailing. Dkt. 15 at 6–8. According to Defendant, the legislative history indicates that only LPRs can satisfy the residency requirement. *Id.* at 9 (citing H.R. Rep. 112-10, at 23 n.16). But the government's reliance on this legislative history is inappropriate, and its interpretation is wrong. First, circuit precedent forecloses reliance on the House Committee Report in this context. The Ninth Circuit has "long held that where a statute is unambiguous, [courts] need not resort to legislative history in applying the statute." *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1268 (9th Cir. 2009). This is true even when the legislative history suggests Congress had alternative intent. For example, in *Cajun Operating Co.*, the Ninth Circuit considered the remedial provisions of the Americans with Disabilities Act (ADA). The Court concluded that the unambiguous language of 42 U.S.C. § 1981a(a)(2) limited the availability of punitive and compensatory damages to ADA discrimination claims and did not extend such remedies to ADA retaliation claims. *Id.* The Court reached this holding despite acknowledging that the legislative history supported the contrary idea that Congress intended "a broad remedial purpose," ultimately noting that "the legislative history is not dispositive, because the text of section 1981a is unambiguous." *Id.*

Second, the legislative history of the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, does not provide the support Defendant claims that it does. The 2011 amendments' primary purpose was to establish domicile as the defining feature of residence for venue purposes and ensure that all natural persons, including LPRs, among others, could raise a venue defense. Through these amendments, Congress resolved an existing circuit split over whether "residence" should be equated with "domicile." H.R. Rep. 112-10, at 20-21 (2011). Consistent with this focus on domicile, Congress made two changes affecting noncitizens. First, Congress amended 28 U.S.C. § 1391(c)(1), adding the language on which the

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 6
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

government now relies, in order to "permit permanent resident aliens domiciled in the United States to raise a venue defense," a goal that was "[i]n keeping with the consistent focus of determining venue by reference to the domicile of natural persons[.]" *Id.* at 23. The Committee Report also noted that the ability to raise a venue defense would be limited to those who could "form the intent to remain in this country indefinitely" and therefore may exclude undocumented noncitizens. *Id.* at 23 n.16. Critically, as discussed below, Congress was aware that certain noncitizens *without* LPR status, like Plaintiffs, could form a lawful intent to remain and therefore establish domicile when it chose to make domicile the touchstone for venue.

Finally, Congress revised subsection (c)(3) to also focus on domicile, making changes that "shift[ed] the focus from 'alienage' of a defendant to whether the defendant has his or her 'residence' outside the United States." *Id.* at 22. This alteration meant that no one domiciled abroad, citizen or not, could raise a venue defense. *Id.* This provision further demonstrates that Congress's purpose in amending § 1391(c) was to make domicile the essential requirement for residency, regardless of a litigant's immigration status.

Defendant's primary authority for reading a preclusive purpose into these amendments is a 19th-century case in which the Supreme Court presumed, but did not hold, that noncitizens could not establish venue in the United States. *See* Dkt. 15 at 6 (citing *Galveston, H. & S.A. Ry. Co. v. Gonzales*, 151 U.S. 496, 506-07 (1894)). However, other cases Defendant cites describe *Galveston* as setting forth only a presumption. *See, e.g.*, *Williams v. United States*, 704 F.2d 1222, 1225 (11th Cir. 1983). These cases do not support the government's contention that Congress's amendments permitted LPRs, and LPRs alone, to establish venue.

Regardless, this case law predates the 2011 amendments, which *did* address domicile and immigration status. Notably, in addressing these issues, and as described above, Congress chose to make domicile the basis of the Act's residency requirement. In doing so, Congress acted with

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 7
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1   full knowledge of case law stating that noncitizens who were *not* LPRs could establish domicile.

2   Indeed, the Committee Report favorably cited a case stating that LPR status is not necessary to

3   establish lawful domicile. *See* H.R. Rep. 112-10, at 23 n.16 (citing *Castellon-Contreras v. I.N.S.*,

4   45 F.3d 149 (7th Cir. 1995)). In that case, the court concluded that domicile turns on an individual's

5   capacity to form a lawful intent to remain. 45 F.3d at 153-54 ("In order to have a 'lawful

6   domicile,' . . . a[] [noncitizen] must have the ability, under the immigration laws, to form the intent

7   to remain in the United States indefinitely. . . . [Noncitizens] can become lawful domiciliaries

8   without first obtaining LPR status."); *accord White v. I.N.S.*, 75 F.3d 213, 215 (5th Cir. 1996)

9   (same); *Lok v. I.N.S.*, 548 F.2d 37, 40 (2d Cir. 1977) (holding that LPR status was not necessary

10  to establish "lawful domicile" for 212(c) relief in deportation proceedings). Thus, the legislative

11  record confirms that Congress was both aware that non-LPRs could establish domicile and

12  intended that domicile, rather than LPR status, be the touchstone for venue.[1]

13      Defendants point to another case where they are raising similar arguments. *See* Dkt. 15 at

14  5 n.2. There, in their reply brief, they further argued that § 1391(c)(1) must be read restrictively in

15  light of prior case law. But that argument upends the legislative history. Congress changed the law

16  to focus on domicile, eliminating the "presumption" of citizenship Defendant emphasizes at length.

17  In so doing, the Committee favorably cited case law that said even individuals who are *not* lawful

18  permanent residents can establish venue. *Rodriguez Alvarado*, 2017 WL 2303758, at *3 ("Notably,

19  the only mention of non-LPR aliens in the Report suggests that Congress was aware that non-LPRs

20  could establish domicile in the United States."). Reading a *preclusive* effect into a statute designed

21  explicitly to be more *inclusive* misunderstands what Congress sought to do and misinterprets the

22

23  _____

24  [1] For all these reasons, Defendant's reliance on *Najera v. United States*, No. 1:16CV459 (JCC/JFA), 2016 WL 6877069 (E.D. Va. Nov. 22, 2016) is unwarranted. That case ignored the statute's plain text and wrongly interpreted the legislative history.

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 8
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

statute. *See, e.g., Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, No. 18-CV-007 (TSC), 2020 WL 2735570, at *4 (D.D.C. May 26, 2020) (congressional amendment to "expand" the coverage of a statute says little about what is "excluded" from the statute). Other courts addressing this same issue have recognized this fact. As the *Flores* court explained, "[a]lienage is not a reason stated in the statute as a basis for finding persons outside its reach. When Congress intended to exclude—as it did when 'real property is involved'—it said so." 108 F. Supp. 3d at 130.

Further, even the Committee's statement that only those who can "form the intent to remain in this country indefinitely" may establish domicile, H.R. Rep. 112-10, at 23 n.16, does *not* say what Defendants ask this Court to say: that only LPRs can establish venue. *See Rodriguez Alvarado*, 2017 WL 2303758, at *3. Instead, consistent with Plaintiffs' position, the Committee suggested that only undocumented noncitizens without a pathway to lawful status are unable to establish domicile. The Committee's citation of a case that did not require LPR status to establish domicile only underscores this point. For all these reasons, even setting aside the statute's plain language, the legislative history of the 2011 amendments does not support Defendant's restrictive reading of the statute.[2]

### B.   E.L.A. and O.L.C. are domiciled in the Western District of Washington.

E.L.A. and O.L.C. have an established domicile in the Western District of Washington.

---

[2] It is noteworthy that Defendant is inconsistent about its own position. In Defendant's motion, the United States acknowledges that in a similar case in Florida involving a FTCA family separation claim, it has chosen *not* to seek to transfer the case to a different district, despite its claim here that venue is improper. Dkt. 15 at 9. Defendant never explains this discrepancy or why this case should be transferred but the other should not. This suggests that Defendant's position is strategic, not principled, and certainly not driven by the financial considerations they highlight as a reason to transfer this case. Ultimately, Congress chose to allow FTCA plaintiffs to file their lawsuits where they reside, *see* 28 U.S.C. § 1402(b), and that is what E.L.A. and O.L.C. have chosen to do here.

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 9
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1   "[A] person is 'domiciled' in a location where he or she has established a 'fixed habitation or abode

2   in a particular place, and [intends] to remain there permanently or indefinitely.'" *Lew v. Moss*, 797

3   F.2d 747, 749–50 (9th Cir. 1986) (second alteration in original) (*quoting Owens v. Huntling*, 115

4   F.2d 160, 162 (9th Cir. 1940)); *see also Harris v. Becerra*, No. 2:17-CV-1802-RAJ, 2019 WL

5   414503, at *2 (W.D. Wash. Jan. 31, 2019) (quoting *Lew*).

6       Although Defendant asserts that Plaintiffs are in an "illegal status," Dkt. 15 at 10,

7   Defendant misstates the law and the facts. E.L.A. has been lawfully paroled into the United States

8   while his application for asylum is pending. *See* Maltese Decl. Ex. A (Notice of Release and Proof

9   of Service). Accordingly, E.L.A. has been granted employment authorization and may legally live

10  and work in the United States. E.L.A. Decl. ¶ 5. O.L.C. is also entitled to live in this country while

11  his father's asylum application (which, if granted, would entitle him to derivative asylum status)

12  is being adjudicated. 8 U.S.C. § 1158(b)(3)(A); *see also* O.L.C. Decl. ¶ 6. The family has settled

13  in Seattle, where E.L.A. works lawfully and O.L.C. attends high school. E.L.A. Decl. ¶¶ 4–5, 10;

14  O.L.C. Decl. ¶¶ 4–5. They fear persecution if forced to return to Guatemala and intend to remain

15  in Washington. E.L.A. Decl. ¶¶ 2, 8–9, 12; O.L.C. Decl. ¶¶ 2, 9–10.

16      E.L.A. and O.L.C. are no different from the plaintiffs in *Rodriguez Alvarado* and *Flores*,

17  all of whom were found to have established domicile. The plaintiff in *Flores*, like Plaintiffs here,

18  had a pending application for asylum. 108 F. Supp. 3d at 130. And in *Rodriguez Alvarado*, the

19  plaintiff had been granted withholding from removal, which the court noted "does not lapse after

20  a set amount of time," 2017 WL 2303758, at *4, thereby satisfying the "ability under the

21  immigration laws to form the intent to remain in this country indefinitely," *see id.* (citation omitted).

22  Like the plaintiffs in *Flores* and *Rodriguez Alvarado*, E.L.A. and O.L.C. intend to remain in this

23  country indefinitely. Plaintiffs have explained in their declarations that they consider Washington

24  to be their home and that they have no intention of moving anywhere else. E.L.A. Decl. ¶ 2; O.L.C.

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 10
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1  Decl. ¶ 2. Seattle is the place where they work or go to school and where they have developed a

2  community and connection. E.L.A. Decl. ¶ 8; O.L.C. ¶ 9.[3] Moreover, as asylum applicants,

3  Plaintiffs can form such an intent to remain, as Congress has provided them with a route to

4  obtaining permanent lawful status in this country. *See* 8 U.S.C. § 1158. Consequently, Congress

5  has clarified that they are not deemed to accrue unlawful presence, *see id.* § 1182(a)(9)(B)(ii),

6  (iii)(II); *Flores*, 108 F. Supp. 3d at 130, and they cannot be taken away from their home in Seattle,

7  *see* 8 U.S.C. § 1229a(c)(1)(A) (immigration judge must determine whether individual is

8  removable).

9      Defendant also argues that E.L.A. and O.L.C. are not domiciled here because at the time

10  of their 2018 arrival in the United States they told a CBP officer they intended to travel to

11  Philadelphia. Dkt. 15 at 11–12. But, of course, nothing about those prior plans prevented Plaintiffs

12  from later establishing domicile in this District, as they have in fact done. E.L.A. and O.L.C.'s

13  declarations and the evidence of their considerable, permanent ties to this district—and their choice

14  *not* to go to Pennsylvania after nearly two years of living here—should make this clear.

15      Defendant also egregiously misrepresents the circumstances of E.L.A.'s and O.L.C.'s

16  separation. In Defendant's motion, the United States claims that it "provided ELA the option of

17  being reunited with his son, OLC, *before* his removal." *Id.* at 12 (emphasis added). That is

18  categorically false, as Defendant's own evidence shows. The exhibit Defendant cites contains a

19  declaration from an attorney in the *Ms. L.* litigation dated November 6, 2018—several months

---

[3] For all these reasons, Defendant's citation to *Little v. Grant Cnty. Hosp. Dist. #1*, No. 18-cv-00292, 2020 WL 1433526 (E.D. Wash. Mar. 23, 2020) provides Defendant with no support. There, the evidence showed that "Plaintiffs were living a transitory lifestyle." 2020 WL 1433526, at *2. The evidence here shows the opposite: that E.L.A. and O.L.C. have formed deep connections to the community and intend to stay here indefinitely. Indeed, many of the factors that the *Little* court cited—such as current residence, bank accounts, membership in organizations, the state issuing a driver's license, and payment of taxes—would support a finding that E.L.A. and O.L.C. are domiciled in Washington.

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 11
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

after Defendant removed E.L.A. to Guatemala and separated him from O.L.C. pursuant to the family separation policy. Dkt. 16-4 at 3. The declaration makes clear that as part of court-ordered efforts to reunify parents and children that *Defendant unlawfully* separated, the declarant contacted E.L.A. to determine whether he wanted to allow O.L.C. to remain in the United States. *Id.* ¶ 3. According to the declarant, E.L.A. stated that he preferred to let O.L.C. remain in the United States. *Id.* ¶ 5. Defendant misstates the facts to minimize the egregious harm, but regardless, the facts do not shed light on where Plaintiffs intend to live indefinitely. As described above, the relevant evidence—Plaintiffs' connections to this forum—demonstrate venue is proper here.

## II.   The § 1404 Factors Favor Honoring Plaintiffs' Choice of Venue.

The Western District of Washington is also an appropriate forum for this case when considering whether the Court should transfer this case pursuant to 28 U.S.C. § 1404. "Under § 1404(a), the district court has discretion 'to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Section 1404 requires a district court to consider "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). In exercising their discretion, courts also look to the following factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498–99. In addition to these "[p]rivate factors," courts may also look to certain public factors, including, as relevant here, "the local interest in having localized controversies decided at home." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 12
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1986) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The moving party—in this case, Defendant—has the burden of demonstrating that a transfer is warranted. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

Here, as Plaintiffs explain below, these factors weigh in favor of continuing this case in Washington. Notably, several other courts across the country facing FTCA claims involving ICE or CBP's activities in other districts have ruled against similar requests to transfer. *See, e.g.*, *Doe*, 2017 WL 4864850, at *2–3; *Rodriguez Alvarado*, 2017 WL 2303758, at *6–8; *Flores*, 142 F. Supp. 3d at 287–91. For the reasons below, this Court should do the same.

A.  The Plaintiff's Choice of Forum.

At the outset, "[t]here is a strong presumption in favor of the Plaintiff's choice of forum." *Earthbound Corp. v. MiTek USA, Inc.*, No. C16-1150 RSM, 2016 WL 9227684, at *2 (W.D. Wash. Sept. 22, 2016) (*citing Piper Aircraft*, 454 U.S. at 255). Significantly, the choice of forum "is entitled to greater deference when a plaintiff chooses its home forum." *Rodriguez Alvarado*, 2017 WL 2303758, at *6 (internal quotation marks omitted); *see also Microsoft Corp. v. Mai*, No. C09-474RAJ, 2009 WL 10678620, at *4 (W.D. Wash. Nov. 2, 2009) (this factor "weighs heavily against transfer" where, as here, plaintiff[s'] "choice . . . is [their] home forum"); *Koninklijke Philips Elecs. N.V. v. Zoll Med. Corp.*, No. C12-18 RAJ, 2012 WL 13026641, at *3 (W.D. Wash. Nov. 15, 2012) (similar). Although E.L.A. and O.L.C. theoretically *could have* brought this action in either New York or Texas (or Washington, D.C., where the family separation policy was created and directed), there is no reason why they should be *required* to litigate thousands of miles from home. Thus, this factor weighs strongly against transfer.

B.  Costs and Convenience of Litigation in the Different Forums.

The relative costs that the parties will bear also strongly favors maintaining Plaintiffs' action in this district. Defendant argues "most" of the "significant number of witnesses" it plans

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 13
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

to call are in Texas, and that this "will be a substantial financial burden" if the case proceeds here. Dkt. 15 at 16. This ignores that witnesses will be also called from New York, Washington D.C., and indeed, from Seattle, where Plaintiffs reside.

Notably, when one party seeks to transfer a case, "courts . . . consider the parties' relative capacity to absorb litigation costs." *Hong v. Recreational Equip., Inc.*, No. 19-0951JLR, 2019 WL 5536406, at *6 (W.D. Wash. Oct. 25, 2019). Here, like in similar cases, "there is a significant disparity in the relative means of the parties, and [thus] this factor weighs against the requested transfer." *Doe*, 2017 WL 4864850, at *2; *see also Rodriguez Alvarado*, 2017 WL 2303758, at *6 ("[A] transfer would impose such a financial burden on Plaintiffs that it would indeed shift the burden of the case from the Government to Plaintiffs."); *Flores*, 142 F. Supp. 3d at 289 (similar); *Wilton v. Hallco Indus., Inc.*, No. C08-1470RSM, 2009 WL 113735, at *4 (W.D. Wash. Jan. 15, 2009) (observing that a corporation was "in a much better position to bear the inconvenience of litigating the case in Seattle" than an individual plaintiff). E.L.A. and O.L.C. have very limited means and are represented by a Washington-based non-profit civil rights organization and *pro bono* private counsel. The cost to E.L.A. and O.L.C. of flying to Texas and putting themselves up in a hotel for the duration of trial will be prohibitive. As E.L.A. explains, he makes barely makes enough to provide for his family, with no savings to pay for flights or hotels. E.L.A. Decl. ¶¶ 4–7. Similarly, O.L.C. is still in school, meaning he has no way of paying to travel to Texas. O.L.C. Decl. ¶¶ 5–8.

On the other hand, Defendant has the resources to call the witnesses it wants regardless of forum. In any event, Defendants' generalized assertion about relative costs is speculation. It provides no information about who its witnesses will be, where they are actually located, or the relative cost of trying this case in the Southern District of Texas. Significantly, there is no issue of any Texas or New York-based witness being required to travel to Seattle for quite some time.

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 14
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Especially in light of the ongoing pandemic, Plaintiffs anticipate that most depositions will need to be taken remotely. Further, even assuming a trial is conducted with counsel and the parties in the courtroom, there may be a variety of alternative solutions to witness testimony. *See Flores*, 142 F. Supp 3d at 289 ("[V]ideotapes of witnesses' testimony and testimony via live video is available for witnesses [unwilling to travel].").

It is well established that "transfer should not be effectuated if it would serve to merely shift rather than eliminate the inconvenience." *Wilton*, 2009 WL 113735, at *4 (internal quotation marks omitted); *see also Decker Coal Co.*, 805 F.2d at 843 (affirming district court decision where "[t]he transfer would merely shift rather than eliminate the inconvenience"). Here, the only thing a transfer would do would be to shift the burden of any witness travel from Defendant's witnesses—who are dispersed throughout the entire country—to E.L.A. and O.L.C. That is particularly important given Plaintiffs' lack of resources to pursue their claims in a courthouse thousands of miles away. Even if they had the resources and ability to travel, Defendant's request to transfer the case would create additional burden by making it likely that O.L.C. would miss school. O.L.C. Decl. ¶ 10. Moreover, O.L.C. has expressed serious apprehension of returning to Texas, which he knows primarily as the place he was separated from his father. *Id.* ¶ 11; *see also Rodriguez Alvarado*, 2017 WL 2303758, at *6 (observing that transfer was not favored where "[r]eturning to Texas, the site of the alleged mistreatment would force Plaintiffs to relive their trauma"). In addition, moving the case to Texas would "would also limit [E.L.A.'s] ability to care for other family members" here in Washington—namely, O.L.C. and his younger brother. *Rodriguez Alvarado*, 2017 WL 2303758, at *7. Acknowledging that it would simply shift the burden, courts facing similar situations as this one—where noncitizens have sued over their mistreatment near the southern border—have declined to transfer cases. *Flores*, 142 F. Supp. 3d at 287–91 (declining to transfer case filed in New York where most events took place and

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 15
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

government witnesses were in Texas and Florida); *Rodriguez Alvarado*, 2017 WL 2303758, at *6–8 (similar, involving case filed in New Jersey and events in Texas); *Doe*, 2017 WL 4864850, at *2–3 (similar, involving case filed in Tennessee and events in Texas).

Moreover, many witnesses outside of Texas will be required to address Plaintiffs' claims, including officials responsible for creating and directing the family separation policy. Defendants concede the case involves "many different issues," "[l]ikely, the most important of which will be issues concerning the former zero tolerance policy. That issue is of national importance and therefore, weighs equally in any given district." Dkt. 15 at 7. In addition, witnesses from New York will be required to address the events that occurred in New York. And at least two of the most important witnesses, Plaintiffs themselves, are in Washington. This dispersion of witnesses simply underscores that this case has no obvious place where most witnesses reside.

For similar reasons, "the respective parties' contacts with the forum" weighs against transfer. As the U.S. government, Defendant has equal contacts with all forums, while Plaintiffs have no existing contacts with Texas or New York. In contrast, as explained above, Plaintiffs have made Seattle their home.

Finally, the "availability of compulsory process to compel attendance of unwilling non-party witnesses"—another witness-related factor—does not support transfer to the Southern District of Texas. Dkt. 15 at 16. Defendant, as the U.S. government, can compel its Texas-based agents and employees to testify at trial regardless of where the case is heard, as other courts have recognized. *See Rodriguez Alvarado*, 2017 WL 2303758, at *7 ("As federal employees, these witnesses may be compelled to testify by the Government."); *Doe*, 2017 WL 4864850, at *3 (same).

C.  The Remaining Private Factors are Neutral.

The remaining factors are neutral. The first *Jones* factor ("the location where the relevant agreements were negotiated and executed") is inapplicable because there are no relevant

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 16
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1    agreements between the parties that were "negotiated and executed."

2          *Jones'* second factor concerns which state is "most familiar with the governing law." One

3    of Plaintiffs' claims arises under New York law and three under Texas law, and all of them involve

4    underlying issues of the federal government's obligations to noncitizens under the Immigration

5    and Naturalization Act. Any federal court that could hear the case—be it in Washington, New

6    York, or Texas—would need to apply the law of a state other than the one where it sits. This Court

7    is no less capable of assessing and applying the law of multiple states than is the Texas court, and

8    this factor does not justify transfer. *See Rodriguez Alvarado*, 2017 WL 23203758, at *8 (stating

9    that this factor does not favor transfer where the "matter involve[d] many questions of federal law,

10   including sections of the Immigration and Nationality Act, along with the regulations promulgated

11   under it"); *Flores*, 142 F. Supp. 3d at 290 (similar); *Hong*, 2019 WL 5536406, at *4 (different

12   district courts are "equally capable of applying federal law").

13         Moreover, the state law that the Court will apply is not complex. Plaintiffs assert common

14   torts that do not differ significantly from state to state, including abuse of process, intentional

15   infliction of emotional distress, and negligence. Such "state law tort claims . . . are not complex[,

16   and] [t]he court can ascertain Texas law with help from counsel." *Flores*, 142 F. Supp. 3d at 290.

17   Because this "action does not involve complex questions or another state's laws" this court should

18   "accord little weight to this factor." *Id.* (citation omitted); *see also Cray, Inc. v. Raytheon Co.*, No.

19   C15-1127JLR, 2016 WL 3254997, at *5 (W.D. Wash. June 13, 2016) (similar); *Ahead, LLC v.*

20   *KASC, Inc.*, No. C13-0187JLR, 2013 WL 1747765, at *10 (W.D. Wash. Apr. 23, 2013) (similar).

21         The fifth *Jones* factor ("the contacts relating to the plaintiff's cause of action in the chosen

22   forum") also does not aid Defendant. Plaintiffs reside in this District and are central witnesses in

23   this case. Although other witnesses may reside in Texas, New York, Washington, D.C., and

24   elsewhere, the presence of witnesses and potential witnesses across the country renders this factor

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 17
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

neutral.

Finally, the ubiquity of electronically stored information means that as to the eighth *Jones* factor ("the ease of access to sources of proof") there is likely to be no difference between Washington and any other forum. And if there are any relevant hard copy records in Texas, New York, or elsewhere, they should be produced electronically regardless of the forum. *See Rodriguez Alvarado*, 2017 WL 2303758, at *7 (noting that records in Texas can be produced electronically in New Jersey).

### D.   The Interests of Justice and the Public Interest.

Finally, the interests of justice and public interest support keeping the claims in this jurisdiction. According to Defendant, the Southern District of Texas has an interest in the case because of the allegations surrounding the CBP agents operating in Texas and their alleged wrongdoing. Dkt 15 at 17–18. But "[i]mmigration, and the treatment of those who have entered the United States without inspection is a matter of national concern," not a local one. *Rodriguez Alvarado*, 2017 WL 2303758, at *8; *Doe*, 2017 WL 4864850, at *3 (similar). CBP officers and other officials are employees of the U.S. government, and many of the actions alleged in the complaint were taken in furtherance of a national policy designed at the highest levels of government to traumatize Plaintiffs and others like them. Washington's interest in such issues is no less significant than that of Texas. In fact, Defendant took many actions in furtherance of the family separation policy in the state of Washington. *See Padilla v. Immig. & Customs Enf't*, No. 2:18-cv-928, Dkt. 1 (W.D. Wash.) (filed June 25, 2018) (complaint detailing allegations of women detained at the SeaTac Federal Detention Center who had been separated from their children pursuant to the family separation policy). Accordingly, like other courts to consider these factors in the immigration context, the Court should accord no weight to Defendant's assertion that the

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 18
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1    public interest favors transfer. *Id*.[4]

2    **III.    Plaintiffs Have Adequately Pleaded Claims for Abuse of Process and Negligence.**

3           To survive a motion to dismiss under Rule 12(b)(6) Plaintiffs need only show that the

4    "complaint . . . contain[s] sufficient factual matter, accepted as true, to state a claim to relief that

5    is plausible on its face." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation omitted).

6    The Complaint meets this standard as to all causes of action.[5]

7                  A.   Plaintiffs Have Adequately Pleaded Facts Detailing an Abuse of Process.

8           Defendant first asserts that Plaintiffs have failed to state a claim for abuse of process. But

9    in doing so, Defendant fails to address key allegations in Plaintiffs' complaint that demonstrate

10   they have stated a claim. As Defendant notes, to state a claim for abuse of process under Texas

11   law, Plaintiffs must allege:

12          (1) that the defendant made an illegal, improper or perverted use of the process, a
            use neither warranted nor authorized by the process; (2) that the defendant had an
13          ulterior motive or purpose in exercising such illegal, perverted or improper use of
            the process; and (3) that damage resulted to the plaintiff as a result of such illegal
14          act.

15   *Liverman v. Payne-Hall*, 486 S.W.3d 1, 5 (Tex. App. 2015) (citation omitted). Defendant cannot

16   contest that Plaintiffs have pleaded an improper motive, as Plaintiffs asserted that Department of

17

18   _____

     [4] Moreover, with respect to every factor Defendant asserts in its favor, the decision not to seek
19   transfer in the Florida case undermines its claim that it will be inconvenienced by this case. *See
     supra* n.2. Instead, that decision merely underscores Plaintiffs' point: this case can be litigated in
20   this district just as well as in a district in New York or Texas.
     [5] In a footnote, Defendant expresses "serious concerns" that the Court may lack subject matter
21   jurisdiction because of exceptions to FTCA jurisdiction in 28 U.S.C. § 2680, but does not explain
     its assertion or seek relief. Dkt. 15 at 18 n.8. Under the FTCA, "an exception to the FTCA's general
22   waiver of immunity, although jurisdictional on its face, is analogous to an affirmative defense . . . .
     [and] thus . . . the United States bears the burden of proving the applicability of one of the
23   exceptions to the FTCA's general waiver of immunity." *Prescott v. United States*, 973 F.2d 696,
     702 (9th Cir. 1992). Notably, at least one court has already rejected the discretionary function and
24   due care exception arguments that Defendant suggest they may make. *See C.M. v. United States*,
     No. CV-19-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020).

Homeland Security (DHS) employees and others sought to use E.L.A.'s federal prosecution under

8 U.S.C. § 1325 to separate him from O.L.C., inflicting extreme emotional harm on Plaintiffs, for

the perverted purpose of using family separation to deter future immigrants. *See* Dkt. 1 ¶¶ 32–40.

Yet despite those allegations, Defendant asserts that Plaintiffs have not alleged an abuse of process

because E.L.A "was prosecuted for the purpose intended by the statute." Dkt. 15 at 19.

Defendant's argument misconstrues Plaintiffs' allegations and misunderstands how an

abuse of process claim works. Texas courts acknowledge that "[a]n action for abuse of process

presupposes an originally valid and regular process, duly and properly issued." *Tandy Corp. v.*

*McGregor*, 527 S.W.2d 246, 249 (Tex. Civ. App. 1975); *see also Blackstock v. Tatum*, 396 S.W.2d

463, 467–68 (Tex. Civ. App. 1965). Here, Plaintiffs do not contest that Defendant lawfully

instituted the prosecution against E.L.A. Instead, as they explained in their complaint, Defendant's

employees improperly used the judicial process that followed as a rationale to designate O.L.C. an

unaccompanied minor when, in fact, he was accompanied by his father.

> E.L.A.'s court hearing for his illegal entry took a matter of hours. However, despite
> never entering BOP custody and having only a single, brief court appearance, CBP
> and Immigration and Customs Enforcement (ICE) used E.L.A.'s federal court
> proceedings and prison sentence to designate O.L.C. an "unaccompanied minor."
> *See* 8 U.S.C. § 1232(b)(1); 6 U.S.C. § 279(b).

Dkt. 1 ¶ 38. Moreover, Plaintiffs alleged that the federal court sentenced E.L.A. only to time served

and thus never ordered him removed from DHS custody. Indeed, with the possible exception of

his brief time in federal court, he was in DHS custody at all times. *Id.* ¶ 39.

These allegations are more than sufficient to allege "an illegal, improper or perverted use

of the process, a use neither warranted nor authorized by the process." *Liverman*, 486 S.W.3d at 5.

As Texas courts have explained, "[t]he term "process" is defined as "[a] summons or writ, esp. to

appear or respond in court." *Pisharodi v. Watts Law Firm, L.L.P.*, No. 13-07-665-CV, 2008 WL

3522119, at *2 (Tex. App. Aug. 14, 2008) (second alteration in original) (quoting Black's Law

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 20
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Dictionary 1010 (8th ed. 2005)); *see also Gonzalez v. United States*, No. EP-14-CV-263-PRM-RFC, 2015 WL 13344910, at *7 (W.D. Tex. Aug. 12, 2015), *report and recommendation adopted*, No. EP-14-CV-263-PRM, 2015 WL 13345624 (W.D. Tex. Sept. 14, 2015). To allege an *abuse* of that process, "the process must have been used to accomplish an end which is beyond the purview of the process and compels a party to do collateral things that he could not be compelled to do." *Id.*; *see also, e.g.*, *Blanton v. Morgan*, 681 S.W.2d 876, 878 (Tex. App. 1984) (same); *Rodriguez v. Carroll*, 510 F. Supp. 547, 553 (S.D. Tex. 1981) ("Overt acts done to obtain a collateral and unlawful objective to that appearing on the face of the instituted action may amount to abuse of process."). That is exactly what Plaintiffs allege here: Defendant's employees used E.L.A.'s prosecution and his court-required appearance to compel his separation from his son, a designation that was "beyond the purview of the process," not warranted by the process, and certainly improper. *See Ms. L. v. Immig. & Customs Enf't*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018). Nothing about E.L.A.'s particular prosecution required that O.L.C. be designated an unaccompanied minor. Defendant could have just as soon returned E.L.A. to his son after his short appearance in federal court (or even brought them to court together). Defendant's employees did not do that, but instead used E.L.A.'s prosecution, with its lone court appearance, to justify the separation.

Notably, Defendant does not address these allegations or the argument that O.L.C.'s separation was improper and unwarranted. Instead, Defendant focuses only on the alleged fact that its employees may have had a reason to prosecute E.L.A. But as the cases cited above demonstrate, using a lawfully instituted process to obtain *other* objectives that are improper and not warranted by the process constitutes an abuse of process. This is precisely why an abuse of process claim differs from a malicious prosecution claim. *See Blackstock*, 396 S.W.2d at 468. As described above, Plaintiffs have alleged that Defendant's employees used the court-required process to obtain a "collateral and unlawful objective," *Rodriguez*, 510 F. Supp. at 553, that was "beyond the purview

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 21
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

of the process," *Blanton*, 681 S.W.2d at 878. Such allegations about a defendant's "improper use of process *after* it was issued" demonstrate Plaintiffs have stated a claim recognized by Texas courts. *Duffie v. Wichita Cnty.*, 990 F. Supp. 2d 695, 720 (N.D. Tex. 2013) (holding that plaintiff had stated abuse of process claim).

### B.  Plaintiffs' Have Properly Pleaded a Negligence Claim.

Second, Defendant asserts that Plaintiffs have not stated a negligence claim as to their family separation because (1) Plaintiffs did not specify the duty owed to them; and (2) Plaintiffs do not allege a special relationship that would allow for a claim involving mental anguish.

As to Defendant's first argument, the "existence of a legal duty is a question of law for the court." *Fort Bend Cnty Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991). Texas courts, like "a significant majority of courts in other states have . . . concluded that prison or jail officials owe a duty of reasonable care to protect inmates from harm when that harm is reasonably foreseeable." *Salazar v. Collins*, 255 S.W.3d 191, 200 (Tex. App. 2008). As Plaintiffs' custodian, Defendants had a duty of reasonable care to protect them from the harm that was reasonably foreseeable—and here, from harm that family separations would inevitably cause. Moreover, even had this not been established, Texas courts recognize a broad range of duties that encompass Defendant's employees conduct in this case. Under Texas law, a claim of negligence requires "a duty, a breach of that duty, and damages proximately caused by the breach of duty." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Texas courts recognize that "[t]he common law of torts, including the concept of duty, must evolve in light of the changing conditions and circumstances of society." *Berly v. D & L Sec. Servs. and Investigations, Inc.*, 876 S.W.2d 179, 188 (Tex. App. 1994). "[In] determin[ing] whether a duty exists under common law, [Texas courts] apply a risk-utility balancing test." *McCullough v. Godwin*, 214 S.W.3d 793, 805 (Tex. App. 2007). This test "consider[s] several interrelated factors including the risk, foreseeability,

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 22
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendants." *Id.* at 805–06. Applicable legal duties thus cover a broad array of conduct. For example, Texas law recognizes a duty of care in certain contexts of the parent-child relationship, *Felderhoff v. Felderhoff*, 473 S.W.2d 928, 930–31 (Tex. 1971), the landlord-tenant relationship, *Osti v. Saylors*, 991 S.W.2d 322, 326 (Tex. App. 1999), the custodian and jailed-persons relationship, *Salazar v. Collins*, 255 S.W.3d at 200, and universities and their students, *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 893–95 (W.D. Tex. 2019).

Given these responsibilities under Texas law, Defendant's employees who had custody of E.L.A. and O.L.C. had a duty to carry out with due care their obligations in detaining, caring for, and processing them. But Defendant's employees ignored this duty in conceiving of and implementing the Zero Tolerance policy. Dkt. 1 ¶¶ 32–40. Instead, they turned a blind eye to the harm the family separations would inflict. In doing so, they and the officials implementing the Zero Tolerance and family separation policy ignored their duty to protect those in their custody from the reasonably foreseeable harm that would follow family separation.

According to Defendant, despite the allegations, Plaintiffs "never allege what actual duty the United States owed." Dkt. 15 at 20. But Plaintiffs' complaint adequately details Defendant's employees' detention of E.L.A. and O.L.C. and their actions to separate them despite the foreseeable harm that followed. As described above, Texas law provides a basis to recognize a duty in this context. Defendant's employees already possessed a duty of care to the persons in their custody and there was a foreseeable and high risk of harm that would follow E.LA.'s and O.L.C.'s separation. Moreover, the "social utility" of Defendant's conduct is non-existent—indeed, the government conduct at issue was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Ms. L.*, 302 F. Supp. 3d at 1145 (citation omitted). Finally, the

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 23
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1   burden of guarding against this injury was not high and there are few consequences of placing the

2   burden on Defendant, as Defendant could have simply reunited E.L.A. and O.L.C.[6]

3       Defendant also argues that Plaintiffs cannot recover for their negligence claim because they

4   have not alleged that there was a "special relationship." Dkt. 15 at 21. Defendant relies on *Temple-*

5   *Inland Forest Products Corp. v. Carter*, 993 S.W.2d 88, 91 (Tex. 1999) for the premise that

6   Plaintiffs cannot recover damages for mental anguish if they did not sustain physical injury. *Id.*

7   However, *Temple-Inland* recognizes that physical injury is *not* always required. 993 S.W.2d at 91

8   (recognizing that a claimant can recover for mental anguish in cases for bystander recovery,

9   intentional tort of child abduction, invasion of privacy, failure of telegraph company to timely

10  deliver death method, and negligent handling of a corpse). "Whether a plaintiff can recover mental

11  anguish damages without physical injury 'depends on both the nature of the duty breached and the

12  quality of proof offered by the plaintiff.'" *Id.* (citation omitted). Here, Texas courts have held "as

13  a matter of law that the requisite 'special relationship' exists between inmates and [a prison] and

14  [a prison] (and its employees)." *Salazar*, 255 S.W.3d at 200.

15      Accordingly, Plaintiffs have sufficient pleaded a cause of action for negligence, and

16  Defendant's motion to dismiss should be denied.

17                          **CONCLUSION**

18      For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's

19  motion.

20

21

22

23

24
---
[6] Plaintiffs have pleaded their negligence claim in the alternative in the event that the Court does not find Defendant's employees acted to intentionally harm them.

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 24
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

DATED this 8th day of February, 2021.

s/ Matt Adams
Matt Adams
matt@nwirp.org

s/ Aaron Korthuis
Aaron Korthuis
aaron@nwirp.org

s/ Margot Adams
Margot Adams
margot@nwirp.org

**NORTHWEST IMMIGRANT RIGHTS PROJECT**
615 Second Avenue, Suite 400
Seattle, Washington 98104
Tel: +1.206.957.8611
Fax: +1.206.587.4025
matt@nwirp.org
aaron@nwirp.org

s/ Susan Baker Manning
Susan Baker Manning*

**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue NW
Washington, D.C. 20004
Tel: +1.202.739.3000
Fax: +1.202.739.3001
susan.manning@morganlewis.com

Elizabeth M. Chiaviello*
Nicholaus E. Floyd*
**MORGAN, LEWIS & BOCKIUS LLP**
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Tel: +1.713.890.5000
Fax: +1.713.890.5001
elizabeth.chiaviello@morganlewis.com
nicholaus.floyd@morganlewis.com

* Admitted *pro hac vice*

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 25
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2021, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to those

attorneys of record registered on the CM/ECF system.

DATED this 8th day of February, 2021.

s/ Aaron Korthuis
Aaron Korthuis
Northwest Immigrant Rights Project
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 816-3872
(206) 587-4025 (fax)

RESP. TO DEF'S MOT. TO TRANSFER
& PARTIAL MOT. TO DISMISS – 26
Case No. 2:20-cv-1152-RSL

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611