The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| E.L.A. and O.L.C., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | CASE NO. C20-1524-RAJ <br><br> UNITED STATES' REPLY IN FURTHER SUPPORT OF MOTION TO TRANSFER VENUE AND PARTIAL MOTION TO DISMISS <br><br> Noted for consideration: <br> February 12, 2021 |

UNITED STATES' REPLY IN FURTHER SUPPORT
OF MOTION TO TRANSFER
VENUE AND PARTIAL MOTION TO DISMISS
C20-1524-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  The United States has denounced the prior practice of separating children from their families at the United States-Mexico border and committed itself to family reunification. *See* Executive Order on the Establishment of Interagency Task Force on the Reunification of Families, Feb. 2, 2021 (attached as Ex. G to the Supplemental Declaration of Nickolas Bohl ("Supp. Bohl Decl.")).  Defendant's motion is not meant to preclude Plaintiffs from seeking relief for the harms they allegedly suffered but is limited to the narrow legal issues of whether venue is proper and whether Plaintiffs have alleged sufficient facts to state a claim.  Plaintiffs deserve to have their arguments heard, but they must be heard in the proper venue and only after they have sufficiently stated a cause of action that is cognizable under the federal laws.  Plaintiffs' opposition offers thin legal support that venue should remain here or that they have sufficiently pled negligence and abuse of process.

In regard to venue, there are three reasons why the case should be transferred.  First, Plaintiffs cannot establish venue as a legal matter under the plain language of the venue statute because they are not legal permanent residents ("LPR").  Second, Plaintiffs cannot establish venue as a factual matter because they are not domiciled in the Western District.  Third, this matter should be transferred because the Southern District of Texas (or the Southern District of New York) is the more convenient forum.

**A.  <u>Venue Law Precludes a Non-Permanent-Resident Alien from Claiming Residency</u>**

The legal question hinges entirely on how the Court construes the phrase "including an alien lawfully admitted for permanent residence in the United States" found in 28 U.S.C. § 1391(c)(1).  Is the phrase merely provided as a random example or is it intended to include only LPRs as plainly stated?  The latter is the only construction that accords meaning to the actions of Congress in amending this statute in 2011.

The creation of § 1391(c)(1) represented an expansion of venue laws to allow lawful permanent residents to claim venue based on domicile, which was never previously allowed.  Prior to 2011, the general presumption was that an alien could not claim venue based on residency because they resided in their native country.  *Galveston, H. & S.A. Ry. Co. v.*

UNITED STATES' REPLY IN FURTHER SUPPORT OF
MOTION TO TRANSFER VENUE AND PARTIAL MOTION
TO DISMISS   C20-1524-RAJ - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Gonzales*, 151 U.S. 496, 506-07 (1894) ("An alien, however, is assumed not to reside in the United States"); *see also* Mot., 6 (collecting cases).  Then, immediately prior to 2011, district courts within the Ninth Circuit debated whether this general presumption was so broad to also include LPRs, which as some courts pointed out, appeared to conflict with how LPRs were treated for diversity purposes.  *See* Mot., 6-7.  After this, Congress passed § 1391(c)(1), which provides: "For all venue purposes—(1) a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled."  There's no dispute that Plaintiffs could not have established venue in this District before 2011 because they would be considered to be domiciled in their native country.  The question is whether Congressional silence now allows them to do so.

Plaintiffs, like all human beings, are natural persons.  There is no dispute about this.  But when Congress amended § 1391 and specifically referred to "lawful permanent residents" it did not do so in a vacuum.  It followed well-established law that aliens in the United States were treated as residents of their native country for purposes of venue—that remains true today except with respect to lawful permanent residents.  These established principles have "roots [that] go back to the beginning of the Republic."  *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706 (1972).  The original Federal Judiciary Act of 1789 was directed to an "inhabitant of the United States," which Congress changed in 1887 to "any person."  In a series of three cases decided in three subsequent years, the Supreme Court reasoned that for "any person" to claim the benefit of venue law they had to establish legal domicile here, and because aliens were considered to be legally domiciled in their native country they could not claim the benefit of residency under venue laws.

First, in *Shaw v. Quincy Mining Co.*, 145 U.S. 444 (1892), the Court considered whether a corporation could be sued in a district other than in which it was incorporated.  In discussing federal jurisdiction, the Court reviewed the 1789 act and stated that "[t]he word 'inhabitant,' in that act, was apparently used, not in any larger meaning than 'citizen.'"  *Id.* at 447.  The Court held that "[a]s to natural persons, therefore, it cannot be doubted that the effect of this

UNITED STATES' REPLY IN FURTHER SUPPORT OF
MOTION TO TRANSFER VENUE AND PARTIAL MOTION
TO DISMISS   C20-1524-RAJ - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

act…restricts the jurisdiction to the district in which one of the parties resides within the state of which he is a citizen." *Id.* at 449.

Second, building off of and citing to this construction, the Court next considered where an alien defendant could be sued. *In re Hohorst*, 150 U.S. 653 (1893) was a patent infringement action brought against an alien German corporation. The suit was brought in the Southern District of New York, but the defendant, Hamburg-American Packet Company, said that it was only an inhabitant of New Jersey. *Id.* at 654-55. The Court said that was immaterial because an alien defendant is not domiciled in any district. "[W]e are of [the] opinion that the provision of the existing statute, which prohibits suit to be brought against any person 'in any other district than that whereof he is an inhabitant,' is inapplicable to an alien or a foreign corporation sued here…such a person or corporation may be sued by a citizen of a state of the Union in any district which valid service can be made upon defendant." *Id.* at 662 (internal citation omitted). The Court also explained that the change from "inhabitant of the United States" to "any person" was "immaterial." *Id.*

The Court then expanded this rule to alien plaintiffs the following year in *Galveston Ry. Co. v. Gonzales*. Gonzales was a citizen of Mexico and brought a tort action against the Galveston Railroad Company. *Galveston*, 151 U.S. at 496-97. The Court mostly discussed in which Texas district was Galveston a citizen, but more importantly for these purposes, the Court explained that Gonzales, as an alien, could not claim venue in any district because he was an inhabitant, i.e. domiciled, in his native country. First, in discussing *Hohorst*, the *Galveston* Court stated that "[n]either this case, nor any other to which our attention has been called, makes any distinction between cases where citizens and aliens are plaintiffs." *Id.* at 503; *id.* at 507 ("It was not meant nor intimated, however, [in *Hohorst*], that the clause in question had no application to cases where an alien was plaintiff, but only where he was defendant."). Therefore, just as an alien-defendant was outside the scope of claiming venue based on residency, so too was an alien-plaintiff. "[I]f the plaintiff be also a citizen, he may bring it in his own district, if he can obtain service upon the defendant in that district. The purpose of this is that the plaintiff

UNITED STATES' REPLY IN FURTHER SUPPORT OF
MOTION TO TRANSFER VENUE AND PARTIAL MOTION
TO DISMISS    C20-1524-RAJ - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 may have the same advantage of litigation in his own district that the defendant has. *An alien,*
2 *however, is assumed not to reside in the United States, and hence must resort to the domicile of*
3 *the defendant.*" *Id.* at 506-507 (emphasis added). These three cases show a clear evolution of
4 the Supreme Court's interpretation of venue from allowing venue based on residency, to finding
5 an alien's domicile is that of his or her native country, and ultimately holding that aliens were
6 outside the scope of venue laws based on their continued legal domicile in their native country.

7     Nor should the Court take up Plaintiffs' invitation to ignore this context because it relies
8 on "19th century case-law." Opp., 6. Supreme Court cases do not come with their own
9 expiration dates and the Court reaffirmed its understanding nearly a century after. "Moreover, in
10 the 79 years since *Hohorst* was decided, Congress has never given the slightest indication that it
11 is dissatisfied with the longstanding judicial view that the 1789 language continues to color the
12 venue statutes, with the result that suits against ***aliens are outside the scope of all the venue***
13 ***laws***." *Brunette*, 406 U.S. at 710-711. That these cases remained binding precedent for over a
14 century only reinforces the United States' argument that Congress knew of and considered these
15 holdings when it passed § 1391(c)(1).

16     Against this backdrop, Congress expanded venue jurisdiction to allow legal permanent
17 residents to claim venue based on his or her now legal domicile within the United States.
18 Mot., 7. But Congress left untouched the general rule that non-resident aliens, like Plaintiffs,
19 cannot base venue on a claim of domicile within the United States. It is difficult to conceive of
20 Congress permitting venue to be established based on unlawful status, particularly when it
21 specifically included only lawful permanent residents in the statute. This Court should not
22 expansively read the statute to undo over 100 years of precedent without some explicit statement
23 allowing non-legal residents to assert venue based on domicile. *Will v. Michigan Dep't of State*
24 *Police*, 491 U.S. 58, 67 (1989) (affirming that Congress is presumed to be familiar with
25 common-law principles and is presumed for those principles to obtain "absent specific provisions
26 to the contrary"); *Microsoft Corp. v. i4iLtd. P'ship*, 564 U.S. 91, 103 (2011) (recognizing that
27 "basic principles of statutory construction require us to assume that Congress meant to

UNITED STATES' REPLY IN FURTHER SUPPORT OF
MOTION TO TRANSFER VENUE AND PARTIAL MOTION
TO DISMISS   C20-1524-RAJ - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

incorporate 'the cluster of ideas' attached to the common-law term it adopted") (internal citation omitted).  Here, Congress did not expressly disclaim the long-accepted understanding that a non-legal resident is deemed not to reside in any district in the United States nor did it provide clear language in the text of Section 1391(c)(1) implicitly demonstrating that this understanding was rejected.

Plaintiffs suggest this argument is flawed and routinely rejected by courts.  Opp., 5.  To be sure, there is a split of authority.  But the majority view, as stated by courts and treatises alike, adheres to the United States' interpretation—Congress intended to continue the rule that non-LPRs are outside the scope of § 1391(c)(1).  See *J.P. v. Sessions*, No. 18-cv-06081, 2019 WL 6723686, at *43 (C.D. Cal. Nov. 5, 2019) ("Courts have determined that non-citizens, including those who [are] not lawful permanent residents, do not reside in any district of the United States for purposes of venue.") (internal citations omitted); *Najera v. United States*, No. 16-cv-0459, 2016 WL 6877069, at *2 (E.D. Va. Nov. 22, 2016); *Aguilar v. United States*, No. 15-cv-0986, Dkt. No. 28 (E.D. Va. Feb. 26, 2016); see also *In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir. 2018) ("Congress thus **slightly modified** the well-established alien-venue rule in one respect.  It granted venue protection to alien natural persons having permanent resident status…This minor change with respect to one discrete class of individuals is insufficient to upend the centuries-old rule that the venue laws do not protect alien defendants.") (emphasis added); Wright et al., FEDERAL PRACTICE AND PROC., 14D Fed. Prac. & Proc. Juris. § 3810 (4th ed. April 2020) ("Contrary to prior law, now certain aliens—those lawfully admitted to the United States for permanent resident status—are considered to 'reside' in a judicial district for venue purposes."); 17 MOORE'S FEDERAL PRACTICE § 110.03[2] (3d ed. 2011) ("The best approach here would be to ignore the U.S. domicile of the illegal alien and treat that person as a non-resident.").

The overall structure of § 1391 further demonstrates that Congress never intended a change as significant as Plaintiffs claim.  Prior to 2011, § 1391(d) stated that an alien defendant could be sued in any district because he was a resident of none.  See *Brunette Machine*, 406 U.S. at 707.  Then Congress replaced § 1391(d) with § 1391(c)(3), which now provides: "a defendant

UNITED STATES' REPLY IN FURTHER SUPPORT OF
MOTION TO TRANSFER VENUE AND PARTIAL MOTION
TO DISMISS    C20-1524-RAJ - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

not resident in the United States may be sued in any judicial district." This too has been held to only apply to legal permanent residents. In *In re HTC Corp.*, the Federal Circuit, after thoroughly reviewing the jurisprudential and legislative history, held that the new subsection did not change the long-standing rule as it pertained to aliens other than lawful permanent residents. "Congress altered how permanent residents (who are, nonetheless, 'aliens') should be treated for venue purposes. *See id.* at 23 ('[T]he proposed statute would grant a venue defense to permanent resident aliens who are domiciled in the United States.') … This shift in language is insufficient to indicate a move away from the longstanding alien-venue rule." *In re HTC Corp.*, 889 F.3d at 1359 (Fed. Cir. 2018) (citing H.R. Rep. No. 112-10, at 20–21 (2011)); *see also Umphress v. Hall*, 2020 WL 4731980 (N.D. Tex. Aug. 14, 2020) (rejecting an expansive read of § 1391(c)(1) on other grounds because "Congress did not expressly disclaim the long-accepted understanding"). Both subsections are clear that Congress limited its expansion to LPRs and only LPRs. Without more in the actual statutory language, the appeals court could not justify "the sweeping repudiation of the *Hohorst/Brunette* rule that Petitioner's position produces." *Id.* at 1359; *see Galveston*, 151 U.S. at 503, 507 (explaining that *Hohorst* applies equally to alien plaintiffs).

Plaintiffs also argue that the term "including" indicates that the LPR qualifier is merely illustrative. Again, context is critical. While "including" can be illustrative, "the term can also be used and construed as restrictive and definitional. The key to whether 'includes' is intended to be used in an illustrative or a definitional manner is determined by its placement and context within the statute. The Court must harmonize the term with the overall statute." *Nievod v. Sebellius*, No. 11-cv-4134, 2013 WL 503089, at *7 (N.D. Cal. Feb. 8, 2013) (internal citations omitted); *Adams v. Dole*, 927 F.2d 771, 777 (4th Cir. 1991) ("[T]he term 'including' can also introduce restrictive or definitional terms.…The inconsistency between the general word and the specific leads to an interpretation, under principles of *ejusdem generis*, that the general may be defined by the specific."). Here, for all the reasons set forth above, "including" connotes a "restrictive" or "definitional" interpretation. This comports not only with the longstanding

UNITED STATES' REPLY IN FURTHER SUPPORT OF
MOTION TO TRANSFER VENUE AND PARTIAL MOTION
TO DISMISS   C20-1524-RAJ - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

history and congressional intent, but common sense.

Plaintiffs are correct that resorting to the legislative history is unnecessary if the statute is clear, but it is Plaintiffs' singular focus on "natural person," divorced from its jurisprudential context, that creates ambiguity. Again, the United States recognizes and appreciates that Plaintiffs are natural persons, but they are natural persons domiciled abroad for purposes of section 1391(c)(1). But if one ignores the jurisprudential context above, then the statute is at most ambiguous—even odd— and the Court should look to the legislative history, which is clear that only lawful permanent residents can claim domicile in the United States. H.R. Rep. No. 112-10, at 23 n.16; *see* Mot., 7-8. Plaintiffs do not address the substance of this history and instead argue that the 2011 amendment was simply about reconciling residency and domiciliary.[1] That certainly motivated the amendment in large part, but it does not negate the import of the statements showing that Congress intended the LPR qualifier to be definitional.

The two cases on which Plaintiffs focus do not address this background venue law whatsoever.[2] Opp., 3-4. Instead, the *Flores* court based its decision on an USCIS interpretative memorandum, which was entirely inapposite on the issue of domicile for venue purposes. *Flores v. United States*, 108 F. Supp. 3d 126, 131 (E.D.N.Y. June 11, 2015). And the *Alvarado* court focused on the same inapposite portions of the legislative history that Plaintiffs focus on, while neglecting to address the relevant portions that specifically explain that a non-LPR cannot claim domicile. *See Alvarado v. United States*, 2017 WL 2303758, at *3 (D.N.J. May 25, 2017); Opp.,

---

[1] Plaintiffs argue that *Castellon-Contreras* allows an alien to establish domicile apart from LPR status. Opp., 6. *Castellon-Contreras* is more nuanced than that. The court explained the general rule that "an alien who enters the country illegally cannot have a 'lawful' intent to remain here." *Castellon-Contreras*, 45 F.3d 149, 153. Because of specific issues with claiming amnesty under the Immigration Reform and Control Act, that plaintiff could establish lawful domicile separate from LPR status. *Id.* at 153-154. That particular situation does not apply here. At this time, Plaintiffs have no ability to form a ***lawful*** intent to remain here indefinitely. They are still subject to a Notice of Removal pending their asylum proceedings. Their parole does not grant them legal status. *See* 8 U.S.C. § 1182(d)(5)(A); *Barney v. Rogers*, 83 F.3d 318, 320 n.1 (9th Cir. 1996) (Stating that parole is the "legal fiction whereby an alien is allowed to be physically present in the United States for a specific purpose. The alien is not deemed to have 'entered' the United States as that term is used in . . . the Immigration and Nationality Act.").

[2] Plaintiff also cites to *Doe v. United States*, No. 16-cv-0856, 2017 WL 4864850 (M.D. Tenn. Oct. 26, 2017). But the question of Section 1391(c)(1)'s applicability was not before that court and the court offered no opinion on its construction. *Id.*

UNITED STATES' REPLY IN FURTHER SUPPORT OF
MOTION TO TRANSFER VENUE AND PARTIAL MOTION
TO DISMISS   C20-1524-RAJ - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

7.[3]  To follow this line of reasoning violates two canons of statutory constriction.  It renders the phrase "alien lawfully admitted for permanent residence" clause superfluous, *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001), and ignores the principle that Congress is presumed to act "with case law in mind." *Abuelhawa v. United States*, 556 U.S. 816, 821 (2009).

The Court should interpret "including an alien lawfully admitted for permanent residence" to give meaning to that phrase, and in light of the history that came before it.  Before the 2011 amendment, no alien could claim venue based on domicile.  The 2011 statute only allowed an alien who is a lawful permanent resident to do so.  Congressional silence, in the face of such longstanding interpretations, should not be construed as expansively as Plaintiffs suggest. Because Plaintiffs are not legal residents, they cannot claim venue, and the Court should transfer this matter to the Southern District of New York or Southern District of Texas.

### B. Plaintiffs Have Not Established that They Are Domiciled in this District

Even putting aside the well-established law just discussed, Plaintiffs also cannot show they are domiciled here as a factual matter.  The United States offered evidence that originally their plan was to move to Philadelphia to find gainful employment, then return home to Guatemala, that their only family contacts were in Philadelphia, and that other than their ongoing immigration proceedings, they had no connection to Washington State.  Plaintiffs only offer their own declarations in rebuttal.  These, by themselves, are insufficient to rebut the evidence the United States presented in its motion. *Branon v. Debus*, 289 F. App'x 181, 183 (9th Cir. 2008) (finding that self-serving declarations by themselves were insufficient to establish domicile); *Owens v. Nuxoll*, No. 12-cv-1482, 2013 WL 5553897, at *12 (E.D. Cal. Oct. 8, 2013); *see also Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015).  Moreover, even if true, Plaintiffs still do not have the ability to legally form the necessary intent to reside here permanently: "Such an interpretation of domicile under the venue statute as including lawful intent to remain would foreclose the possibility that an undocumented alien would be regarded as

---

[3] *Alvarado* was also decided under a different burden.  In that district, the moving party has the burden to show venue is improper. *Id.* at *2.  Here, it is Plaintiffs' burden to show venue is proper.  Mot., 3.

UNITED STATES' REPLY IN FURTHER SUPPORT OF
MOTION TO TRANSFER VENUE AND PARTIAL MOTION
TO DISMISS   C20-1524-RAJ - 8

a domiciliary of the United States for venue purposes." H.R. Rep. No. 112-10, at 23 n.16; *see also*, *Kalawa v. United States*, No. 19-cv-16089, 2020 WL 3603205, at *3 (D.N.J. July 2, 2020) (finding that a FTCA plaintiff who had been, and remained, deported "cannot form a lawful intent to be in any state" and ultimately transferring the case to where the alleged tort occurred); *Lok v. I.N.S.*, 681 F.2d 107, 109-10 (2d Cir. 1982) ("Lok established [his] lawful domicile only when his intent to remain was legal under the immigration laws."). At the very least, if the Court is not inclined to transfer this matter for other reasons, it should stay the case and permit limited discovery regarding Plaintiffs' domicile and their intent to make Washington State their permanent home.

### C. The Southern District of Texas is Clearly the More Convenient Forum

If this Court disagrees that venue law precludes this forum, then this case should still be transferred to the Southern District of Texas or to the Southern District of New York, which are more convenient than this district. Plaintiffs' Opposition focuses solely on the burden to the Plaintiffs. This is undoubtedly a factor but should be given less weight here because none of the operative facts occurred here and because all other witnesses, besides Plaintiffs, reside somewhere else. Plaintiffs recently served their initial disclosures. Of the 31 witnesses listed, only Plaintiffs are in Washington State. Supp. Bohl Decl., ¶ 3, Ex. H. The others are in Texas, New York, or are high-level officials scattered across the country and not likely to be called for trial. Some of Plaintiffs' counsel are already in Texas.

Further, the United States would work with Plaintiffs to lessen any burden. Their depositions would be taken where they live irrespective of where the matter is heard, and the United States would not object if counsel asked for their clients to appear remotely for trial. The United States, however, would want to meet with and prepare its own employee witnesses in person—as it suspects Plaintiffs' counsel would also want to do—and to do so, considering the enormous number of witnesses (including multiple CBP agents located in Texas), would cost Defendant significantly more than it would cost Plaintiffs. And Plaintiffs are represented by two firms, including Morgan, Lewis—one of the nation's largest law firms. If their clients are

UNITED STATES' REPLY IN FURTHER SUPPORT OF
MOTION TO TRANSFER VENUE AND PARTIAL MOTION
TO DISMISS   C20-1524-RAJ - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

indigent as counsel states in opposition, then counsel could pay for their clients' expenses pursuant to Model Rule of Professional Conduct 1.8(e), which allows counsel to advance the costs of a case to indigent clients or even contingent on the outcome.

Plaintiffs also argue that the federal government has more resources than Plaintiffs and therefore can try the case anywhere. To accept this argument would prevent the federal government from ever being able to transfer a matter. More important, the federal government is not a corporation, and, unlike a private party, it has a unique interest in conserving resources whenever possible. Plaintiffs offer no significant opposition to the United States' convenience argument other than the burden to Plaintiffs themselves. This can be mitigated by counsel and should not, by itself, override all other factors that weigh significantly in favor of transfer. For the reasons stated in the United States' motion, the Court should transfer this case to the Southern District of Texas or the Southern District of New York.

### D. **Plaintiffs' Abuse of Process and Negligence-Family Separation Claims Should be Dismissed Pursuant to Rule 12(b)(6)**

1. Plaintiffs Cannot Show an Abuse of Process Claim

Plaintiffs concede that the Defendant's prosecution of E.L.A. was "lawfully instituted." Opp., 20. This by itself should prevent Plaintiffs from asserting abuse of process. Because Defendant prosecuted E.L.A. "in the manner and for the purpose" for which 8 U.S.C. § 1325 was intended, regardless of any claimed improper motive, Plaintiffs have failed to state a plausible claim for abuse of process. *Crear v. US Bank, NA*, No. 3:14-cv-3136-P, 2015 WL 12731741, at *3 (N.D. Tex. May 26, 2015).

But Plaintiffs maintain that because government "employees improperly used the judicial process that followed as a rationale to designate O.L.C. an unaccompanied minor" it converted the otherwise valid process into an abuse of process. Opp., 20. In other words, the United States used a legitimate process to further what Plaintiffs describe as an illegitimate end—the separation of E.L.A. from O.L.C. But this is merely another way of saying that the United States was improperly motived to prosecute E.L.A. Plaintiffs do not point to the separation by itself

UNITED STATES' REPLY IN FURTHER SUPPORT OF
MOTION TO TRANSFER VENUE AND PARTIAL MOTION
TO DISMISS    C20-1524-RAJ - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

because that is not a legal process, as Plaintiffs also concede. Opp., 20. Therefore, if the allegedly abused "process" was E.L.A.'s prosecution, then the claim fails because the prosecution was legal. Or if the allegedly abused "process" was the separation, then the claim fails because this is not legal "process"—and moreover it was legally carried out pursuant to a legal prosecution. At bottom, Plaintiffs' claim is based entirely on the United States' motive for the legal prosecution of E.L.A. This is insufficient.

In reality, Plaintiffs are trying to shoehorn a malicious prosecution claim into an abuse of process claim. "If wrongful intent or malice caused the process to be issued initially, the claim is instead one for malicious prosecution." *Internet Corp. S.A. de C.V. v. Business Software Alliance, Inc.*, No. Civ. A. H-04-2322, 2004 WL 3331843, at *9 (S.D. Tex. Nov. 15, 2004) (citation omitted). But Plaintiffs cannot plead the elements of such a claim (likely because they could not plead such a claim given the validity of the conviction).[4] Here, Plaintiffs allege that Defendant created a policy to prosecute E.L.A. "as a pretext or cover for the goal of furthering the widespread separation of Central American parents and children along the southern border." Compl., ¶ 34. Plaintiffs also allege that the United States "knew or reasonably expected that this policy and the prosecutions under 8 U.S.C. § 1325 taken pursuant to the policy would result in the separation of children from their parents." *Id.* at ¶ 36. If this allegation stated a valid legal theory at all, it would be malicious prosecution—not abuse of process. Therefore, the claim must be dismissed. *See, e.g.*, *Symetra Life Ins. Co. Nat'l Assoc. of Settlement Purchasers v. Rapid Settlements, Ltd.*, No. H-05-3167, 2012 WL 12893482, at *18 (S.D. Tex. May 1, 2012) (holding that the plaintiff's presented evidence that defendant "initiated and pursued arbitration for improper purposes" was a malicious prosecution claim, but not an abuse of process claim) (internal quotation marks omitted).

    2. <u>Plaintiffs Cannot Show a Negligence Claim for Family Separation</u>

---

[4] "A plaintiff in a malicious criminal prosecution claim must establish (1) the commencement of a criminal prosecution against the plaintiff; (2) causation (initiation or procurement) of the action by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff." *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997).

UNITED STATES' REPLY IN FURTHER SUPPORT OF
MOTION TO TRANSFER VENUE AND PARTIAL MOTION
TO DISMISS   C20-1524-RAJ - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Plaintiffs' negligence claim should be dismissed because their Complaint and Response
2   still fail to identify a duty of care under these circumstances. Rather than identify what duty is
3   owed under Texas law when provided the opportunity, it is telling that instead, Plaintiffs
4   reference irrelevant duties of care that have been established under Texas law, including parent-
5   child relationships, landlord-tenant relationships, custodian and jailed-persons relationships, and
6   universities and their students, but do not explain how any of them apply here. Opp., 23-24.
7   Plaintiffs also refer to a "risk-utility balancing test" that Texas courts may use to determine
8   whether a duty exists under common law, but do not explain how that test establishes a duty
9   *here*, under these circumstances, and in the absence of any *physical* injury. Mot., 21.

10   In response to the applicable cases cited by Defendant that show there is no duty to avoid
11   causing mental anguish absent a special relationship, Plaintiffs again cite to a list of exceptions
12   that are irrelevant to the facts in this case, including the negligent handling of a corpse. Opp., 24.
13   Plaintiffs' citation to *Salazar v. Collins*, 255 S.W.3d 191, 200 (Tex. App. 2008), for the
14   proposition that a special relationship exists between inmates and prison employees, is also
15   misplaced. Plaintiffs fail to explain how O.L.C. or E.L.A. were in a special relationship with
16   Defendant akin to prison inmates and employees when they were immediately separated prior to
17   E.L.A.'s detention. In any event, post-*Salazar* cases that examined *Salazar* have specifically
18   held that there is no special relationship between CBP agents and detainees. *See* A*guilar v.*
19   *United States*, No. 16-cv-048, 2017 WL 6034652, at **3-4 (S.D. Tex. June 7, 2017); *Villafuerte*
20   *v. United States*, No. 16-cv-619, 2017 WL 8793751, at **11-12 (S.D. Tex. Oct. 11, 2017).
21   Plaintiffs have therefore failed to allege facts sufficient to establish a negligence claim under
22   Texas law. This claim must be dismissed.

23   **II.   CONCLUSION**

24   For all of the foregoing reasons, the United States respectfully requests that the Court transfer
25   this case, or alternatively, stay the matter and allow discovery on the issue of where Plaintiffs are
26   domiciled. The United States also respectfully requests that the Court dismiss Plaintiffs' second and
27   third claims for relief.

UNITED STATES' REPLY IN FURTHER SUPPORT OF
MOTION TO TRANSFER VENUE AND PARTIAL MOTION
TO DISMISS    C20-1524-RAJ - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

DATED this 12th day of February 2021.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney

*s/ Nickolas Bohl*
NICKOLAS BOHL, WSBA # 48978
Assistant United States Attorneys
Western District of Washington
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
Email: nickolas.bohl@usdoj.gov

*s/ Kristen R. Vogel*
KRISTEN R. VOGEL, NYBA # 5195664
Assistant United States Attorneys
Western District of Washington
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
Email: kristen.vogel@usdoj.gov

Attorneys for the United States

UNITED STATES' REPLY IN FURTHER SUPPORT OF
MOTION TO TRANSFER VENUE AND PARTIAL MOTION
TO DISMISS    C20-1524-RAJ - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970