The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

E.L.A. and O.L.C.,

        Plaintiffs,

        v.

UNITED STATES OF AMERICA,

        Defendant.

Case No. 2:20-cv-1524-RAJ

ORDER

## I.     INTRODUCTION

This matter comes before the Court on the United States' Motion to Transfer Venue and Partial Motion to Dismiss.  Dkt. # 15.  Plaintiffs oppose the motion.  Dkt. # 17.  Having considered the parties' submissions, the relevant portion of the record, and the applicable law, the Court finds that oral argument is unnecessary.  For the reasons set forth below, the Court DENIES the motion to transfer and GRANTS the partial motion to dismiss.

## II.     BACKGROUND

ORDER – 1

Plaintiff E.L.A. ("ELA") and his son, Plaintiff O.L.C. ("OLC") are indigenous Maya people native to Guatemala.[1]  Dkt. # 1 ¶ 19.  ELA is a political activist who advocated for indigenous land rights and received death threats due to his work.  *Id.*  Plaintiffs allege that they "fled persecution and torture in Guatemala to seek asylum in the United States."  *Id.*  On June 18, 2018, Plaintiffs entered the United States near McAllen, Texas.  *Id.* ¶ 20.  OLC was seventeen years old at the time.  *Id.* ¶ 16.  Plaintiffs were questioned and arrested by U.S. Customs and Border Protection ("CBP") shortly after they crossed the border.  *Id.* ¶ 20.  Immigration officers took Plaintiffs to a CBP facility where they were forcibly separated.  *Id.* ¶ 21-22.

ELA was prosecuted for his illegal entry into the United States under 8 U.S.C. § 1325 pursuant to the United States' "Zero Tolerance" policy, announced by former Attorney General Jeff Sessions.  *Id.* ¶¶ 32, 37-38.  ELA had a court hearing on his illegal entry that lasted several hours.  *Id.* ¶ 38.  As a result of ELA's prosecution, OLC was designated an "unaccompanied minor."  *Id.*

As an unaccompanied minor, OLC was placed in the custody of the Office of Refugee Resettlement ("ORR").  *Id.* ¶¶ 39, 42.  On June 20, 2018, OLC was flown to New York and placed in Lincoln Hall Boys Haven, which is associated with the Catholic Charities of the Archdiocese of New York and contracts with ORR to provide services to unaccompanied minors.  *Id.* ¶¶ 50-51.  Because OLC was an unaccompanied minor, ORR was responsible for OLC's care and safety after his placement at Lincoln Hall.  *Id.* ¶ 52.  A month after OLC was taken to New York, ELA was told that he was going to be reunited with OLC.  *Id.*  The next morning, immigration officers took ELA and other fathers who had been separated from their children to the airport for deportation to Guatemala.  *Id.* ¶ 43.

---

[1] The Court assumes the truth of the complaint's factual allegations for purposes of the motion to dismiss.  *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

ORDER – 2

While OLC was at Lincoln Hall, he suffered several incidents of sexual abuse. *Id.* ¶¶ 59-64. Several Serious Incident Reports ("SIRs") documenting the abuse that OLC experienced at the facility were submitted to ORR. *Id.* ¶ 58. Plaintiffs allege that OLC suffered physical and emotion harm and was medicated without parental consent. *Id.* ¶¶ 65-73.

On March 2, 2019, ELA presented himself at a California port of entry and was admitted pursuant to the federal court order in *Ms. L. v. U.S. Immigration and Customs Enforcement*, Case No. 18-cv-428 (S.D. Cal.), requiring family reunification. *Id.* ¶ 45. ELA and OLC were reunited in Seattle, Washington after nine months of separation. *Id.* ¶ 46. In May 2019, ELA was able to apply for asylum with the assistance of *pro bono* counsel. *Id.* ¶ 47. OLC was included in the application as a derivative applicant. *Id.*

Plaintiffs brought this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671 et seq., seeking compensation for the harms they have suffered as a result of their forced separation. Dkt. # 1 at 8-9. Plaintiffs assert four claims under FTCA: (1) intentional infliction of emotional distress; (2) abuse of process; (3) negligence related to family separation; and (4) negligence during OLC's time in custody. *Id.* at 18-19. Plaintiffs seek compensatory damage in the amount of $3,000,000 for harm to ELA and $3,000,000 for harm to OLC. They allege that they both suffer from depression and anxiety based on the emotional trauma caused by their forced nine-month separation. *Id.* ¶¶ 77-78.

The Government moved to transfer venue and partially dismiss Plaintiffs' claims on January 1, 2021. Dkt. # 15. Plaintiffs opposed the motion. Dkt. # 17. The parties subsequently requested several abeyances, granted by the Court, to allow the United States and the group of counsel coordinating negotiations on behalf of similarly situated plaintiffs to settle district courts cases nationwide arising from family separations at the U.S./Mexico border that occurred during the prior administration. Dkt. ## 25-32. Almost a year later, the parties moved to lift the stay after it became known that a

nationwide resolution was not possible.  Dkt. # 33.  The Court lifted the stay, Dkt. # 34, and now turns to the fully briefed pending motion.

### III.   DISCUSSION

**A. Venue Transfer**

1. <u>Improper Venue</u>

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may file a motion for improper venue.  If venue is improper, a district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district" wherein venue is proper.  28 U.S.C. § 1406(a).  In a FTCA action, venue is proper "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."  28 U.S.C. § 1402(b).  A plaintiff carries the burden of showing that venue is proper.  See *Piedmont Label Co. v. Sun Garden Packing Co*., 598 F.2d 491, 496 (9th Cir. 1979).  A court may consider facts outside the pleadings to determine whether venue is proper and need not accept the pleadings as true.  *Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1254 (9th Cir. 2005).

The Government argues that venue is only proper in the Southern District of New York or the Southern District of Texas—where the alleged torts occurred—because Plaintiffs do not "reside" in the Western District of Washington for venue purposes due to their status as noncitizens who are not lawful permanent residents.  Dkt. # 15 at 2, 5. Historically, the Government contends, "residency" was considered only for "natural persons," defined as citizens, for purposes of venue.  *Id.* at 5.  Congress recently expanded that in 28 U.S.C. § 1391(c)(1), specifying that "a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled" for all venue purposes. Because Plaintiffs are not lawful permanent residents, the Government argues, they cannot establish "residency" for purposes of venue.  Dkt. # 15 at 5.

ORDER – 4

The Government raised this same argument regarding residency for venue purposes before the Honorable Robert S. Lasnik in *Luna v. United States*, No. C20-1152RSL, 2021 WL 673534 (W.D. Wash. Feb. 22, 2021), another FTCA matter involving a noncitizen who was not a lawful permanent resident. *Id.* Judge Lasnik rejected the argument and concluded that "a non-citizen who is lawfully present in the United States and has taken steps under the immigration law that objectively manifest an intent to make permanent his residence here can claim residence for purposes of the venue statute." 2021 WL 673534 at *2. Having considered the briefing, relevant case law, statutory amendment, and legislative history, this Court reaches the same conclusion.

Prior to 2011, courts generally held that aliens were not residents of any district of the United States for purposes of venue, and the term "natural person" in the venue statute applied only to citizens. *See Arevalo-Franco v. INS*, 889 F.2d 589, 590 (5th Cir. 1990) (noting that federal courts have held that "for purposes of venue, aliens are not residents of *any* district despite where they might live"); *see also Galveston, H. & S.A. Ry. Co. v. Gonzales*, 151 U.S. 496, 506-07 (1894); *Williams v. U.S.*, 704 F.2d 1222, 1225 (11th Cir. 1983); *but see Castellon-Contreras v. I.N.S.*, 45 F.3d 149, 153 (7th Cir. 1995) (holding that aliens could be lawfully domiciled without first obtaining lawful permanent resident status). In 2011, Congress passed the Federal Courts Jurisdiction and Venue Clarification Act, which amended the venue statute by adding "alien[s] lawfully admitted for permanent residence in the United States," to the category of "natural persons" who may establish venue in the district where he or she is domiciled. Pub. L. 112–63, 125 Stat. 758 (Dec. 7, 2011). While the Court agrees that Plaintiffs would have been unable to establish venue prior to 2011, the Court finds that, under the amendment, Plaintiffs are no longer precluded from doing so.

Under the amended language, Congress did not restrict the statute to apply only to those with legal permanent residence ("LPR") status, per se, but rather more broadly to

aliens "lawfully admitted for permanent residence in the United States." *See Luna* at *2. According to the  legislative history, an alien may establish residency "only if he or she has the ability under the immigration laws to form the intent to remain in this country indefinitely." H.R. REP. 112-10, 33, 2011 U.S.C.C.A.N. 576, 580.  This encompasses a category of aliens broader than that consisting only of those with LPR status.  If Congress meant only to refer to aliens with LPR status, it is highly unlikely it would have articulated such a requirement instead of simply referring to those with such status.

The Government contends that even under this requirement, Plaintiffs still fail to establish residency.  Dkt. # 15 at 8.  It argues that Plaintiffs "cannot currently form a lawful intent to remain in this country indefinitely because both are subject to removal proceedings after their illegal entries."  This is not the case.  ELA has been lawfully paroled into the United States pending a decision in his asylum application.  Dkt. # 18-1 at 2.  He has obtained a work permit and is lawfully employed.  Dkt. # 19 ¶ 5.  OLC is also lawfully present pending adjudication of ELA's asylum application and his own. *See* 8. U.S.C. § 1158(b)(3)(A); Dkt. # 20 ¶ 10.  OLC is enrolled in school and has also obtained authorization to work.  Dkt. # 20 ¶ 5-6.  Both Plaintiffs have indicated their desire to remain in the United States permanently based on their claims that Guatemala "is a dangerous place for our family." *Id.* ¶ 13.

The Court finds that Plaintiffs have demonstrated that they have the ability under the immigration laws to form the intent to remain in this country indefinitely.  This requirement does not require Plaintiffs to show that they have the ability to remain indefinitely, but rather the ability to form the *lawful intent* to remain.  Plaintiffs are currently permitted to be in the country and if their asylum applications are granted, they will be authorized to remain in the United States.  Plaintiffs' submission of asylum applications and current authorization to remain thus constitute "an objective and official manifestation of [their] intent to reside permanently in the United States." *Nwozuzu v.*

ORDER – 6

*Holder*, 726 F.3d 323, 334 (2d Cir. 2013) (evaluating the phrase "intent to reside permanently" in the context of derivative citizenship).

By contrast, if Plaintiffs were in the United States illegally, without any authorization, they could not establish such lawful intent. *See Madrid-Tavarez v. I.N.S.*, 999 F.2d 111, 113 (5th Cir. 1993) (holding that if an alien "had no legal right to be in this country, he could not establish a lawful intent to remain"). Similarly, if they entered the country on temporary visas, they could not establish the requisite intent. *See Brown v. U.S. I.N.S.*, 856 F.2d 728, 731 (5th Cir. 1988) (holding that "an alien cannot lawfully possess an intent to be domiciled in this country while he or she is here on a student visa"). Given the facts here, the Court finds that Plaintiffs have objectively manifested a lawful intent to reside here permanently and thus established residence for purposes of venue.

The Government further argues, however, that Plaintiffs are unable to establish domiciliary, which is distinct from residency and required under Section 1391(c). Dkt. # 15 at 11. "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Courts consider several factors in the determination of an individual's domicile: current residence, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, voting registration and voting practices, and payment of taxes. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). "[A] party's residence is 'prima facie' proof of that person's domicile and, once a person's domicile has been established it presumptively continues unless rebutted with sufficient evidence of change." *Bey v. SolarWorld Indus. Am., Inc.*, 904 F. Supp. 2d 1096, 1102 (D. Or. 2012) (citation omitted).

ORDER – 7

The Government cites *Little v. Grant Cty. Hosp. Dist. #1*, No. 18-cv-00292, 2020 WL 1433526, at *2 (E.D. Wash. Mar. 23, 2020) as "instructive," but the case is factually distinguishable from the instant case.  There, the plaintiffs brought state law claims of negligence and wrongful death against healthcare providers in Washington after their four-month-old daughter died due to septic shock.  2020 WL 1433526, at *1.  Their daughter was born in Montana, they then lived in California for a period, and then moved to Washington shortly before their daughter's death.  *Id.*  They were staying with relatives and were not gainfully employed while in Washington.  *Id.*  They left Washington ten months after their daughter's death and moved to Idaho for several months before moving back to Montana.  *Id.*  It was undisputed that the plaintiffs were "living a transitory lifestyle."  *Id.*

In contrast, Plaintiffs have lived in Washington for over three years—since March 2019.  Dkt. # 1 ¶ 46.  Although Plaintiffs may have expressed an initial intent to live in Philadelphia, they have not lived anywhere else in the United States as a family.  Dkt. # 19 ¶ 2.  ELA lives with his two sons, OLC and a younger son, in a rented apartment, and has been gainfully employed while his two sons have been enrolled in schools in the Western District of Washington.  *Id.* ¶¶ 4, 5, 8.  The Government does not dispute that ELA's current residence, place of employment, and location of two additional family members are all within the Western District of Washington.  Nor does the Government dispute that OLC is—or was at the time of filing—enrolled in high school classes, obtained employment, and lives with his father and brother within the same district.  Based on ELA's financial situation, it is unclear whether he could present evidence of brokerage accounts, a driver's license, a vehicle to register, or any other personal or real property.  Dkt. # 19 ¶¶ 5-7.  ELA's immigration status precludes him from registering to vote and he thus has no voting practices to speak of.  Beyond arguing that Plaintiffs had initially indicated an intent to live in Philadelphia when they first entered the United

ORDER – 8

States, the Government fails to provide evidence to rebut Plaintiffs' domicile in this district.  Venue in this district is therefore proper under 28 U.S.C. § 1402(b).

### 2. More Convenient Forum

If venue is proper, an action may still be transferred "[f]or the convenience of parties and witnesses [and] in the interest of justice," to any other district where venue is proper.  28 U.S. Code § 1404(a).  Under Section 1404(a), the district court has broad discretion to transfer cases based on  "an individualized, case-by-case consideration of convenience and fairness."  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal quotations and citation omitted); see also *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) (holding that "[w]eighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge").

In determining whether transfer is appropriate, a court considers the following factors: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the parties' contacts with the forum, (5) the contacts relating to the plaintiff's claims in the chosen forum, (6) the difference between the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.  *Jones*, 211 F.3d at 498–99. "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981).  Courts may also consider the relative capacity of the parties to pay for litigation.  *See Hong v. Recreational Equip., Inc.*, No. 19-0951JLR, 2019 WL 5536406, at *6 (W.D. Wash. Oct. 25, 2019).  The party who moves for transfer carries the burden of showing that another venue is warranted.  *See* 611 F.2d at 279.

The Court finds that it would not be "in the interest of justice" to transfer the case to a forum wherein Plaintiffs would be unable to litigate.  *See Luna*, 2021 WL 673534 at

ORDER – 9

*3.  The Government itself notes that "Plaintiffs deserve to have their arguments heard," and its motion "is not meant to preclude Plaintiffs from seeking relief for the harms they allegedly suffered" as a result of the United States' prior practice of separating children from their families, which has since been denounced.  Dkt. # 21 at 2.  Plaintiffs have confirmed that they would, in fact, be financially and logistically precluded from litigating their claims if forced to do so in Texas or New York.  Having determined that venue is proper in the Western District of Washington, the Court finds that transfer is neither convenient to Plaintiffs nor in the interest of justice under Section 1404(a).  The strong presumption in favor of the plaintiff's choice of forum and relative costs the parties will bear in a different venue weigh heavily against transfer.  Because the Government has not met its burden of demonstrating that the "balance of convenience clearly favors a transfer," the Court declines to transfer the case.  *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014).

## B.  Partial Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for failure to state a claim.  The court must assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations.  *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).  A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Instead, the plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007).  The complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief.  *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Government here moves to dismiss Plaintiffs' Second and Third Claims for Relief regarding abuse of process and negligence based on family separation.  Dkt. # 15

ORDER – 10

at 18.  The Government argues that Plaintiffs' abuse of process claim should be dismissed with prejudice because Plaintiffs fail to allege that the Government improperly charged ELA under 8 U.S.C. § 1325.  *Id.*  The Government next contends that Plaintiffs' negligence claim should be dismissed without prejudice because Plaintiffs fail to allege any specific facts to support the claim.  *Id.*  The Court will address each in turn.

### 1.  Abuse of Process

It is undisputed that Plaintiffs' abuse of process claim is governed by Texas law. *See Richards v. United States*, 369 U.S. 1, 10 (1962).  Under Texas law, "[a]buse of process is the malicious misuse or misapplication of process in order to accomplish an ulterior purpose."  *Liverman v. Payne-Hall*, 486 S.W.3d 1, 5 (Tex. App. 2015) (quotations and citation omitted).  To state a claim, a party must show the following:

> (1) that the defendant made an illegal, improper or perverted use of the process, a use neither warranted nor authorized by the process;
>
> (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process; and
>
> (3) that damage resulted to the plaintiff as a result of such illegal act.

*Id.*

An abuse of process claim requires a showing of "an improper use of the process after its issuance."  *RRR Farms, Ltd. v. Am. Horse Prot. Ass'n, Inc.*, 957 S.W.2d 121, 134 (Tex. App. 1997).   The term "process" is defined as "[a] summons or writ, esp. to appear or respond in court."  *Pisharodi v. Watts L. Firm, L.L.P.*, No. 13-07-665-CV, 2008 WL 3522119, at *2 (Tex. App. Aug. 14, 2008) (quoting BLACK'S LAW DICTIONARY 1010 (8th ed.2005)).  "Without a showing that the use of the process itself was illegal, a claim for abuse of process must be dismissed."  *Andrade v. Chojnacki*, 65 F. Supp. 2d 431, 469 (W.D. Tex. 1999).

The Government argues that Plaintiffs fail to allege sufficient facts to show abuse

ORDER – 11

of process because they do not allege that ELA's prosecution under 8 U.S.C. § 1325 for illegal entry into the United States "was unwarranted or unauthorized by law, nor can they." Because ELA was properly charged with illegal entry, the Government contends, Plaintiffs cannot show an abuse of process. The Court agrees.

While Plaintiffs have alleged that the Government had an ulterior motive and that damage resulted—the second and third elements of an abuse of process claim—they have not alleged that the Government made an "illegal, improper or perverted use of the process." Dkt. # 15 at 19. Plaintiffs claim that although the Government "lawfully instituted the prosecution" against ELA, the Government then "improperly used the judicial process that followed as a rationale to designate O.L.C. an unaccompanied minor when, in fact, he was accompanied by his father." Dkt. # 17 at 21. This allegation involves the reason for charging ELA, not the process. *See Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 378–79 (Tex. App. 1989) (holding that "[w]hen the process is used for the purpose for which it is intended, even though accompanied by an ulterior motive, no abuse of process occurs"). Because Plaintiffs fail to state the first element of an abuse of process claim under Texas law, the claim must be dismissed. *Andrade*, 65 F. Supp. 2d at 469.

## 2. Negligence – Family Separation

To prevail on a negligence claim under Texas law, a plaintiff must prove a legal duty, a breach of that duty, and damage proximately caused by the breach. *Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 88 (Tex. App. 2012). The Government argues that Plaintiffs fail to state a negligence claim related to family separation because (1) they have not alleged any duty owed to Plaintiffs in the complaint, and (2) they have not alleged a special relationship or physical injury resulting from the family separation, which is required under Texas law to recover damages. Dkt. # 15 at 21. The Court agrees that Plaintiffs did not allege that any duty was owed to Plaintiffs with respect to the family separation. Plaintiffs have failed to identify any Texas case law to support the

ORDER – 12

existence of such a duty.

Moreover, Texas courts do not recognize "a general duty to avoid negligent infliction of mental anguish." *Aguilar v. United States*, No. 1:16-CV-048, 2017 WL 6034652, at *3 (S.D. Tex. June 7, 2017). Mental anguish may "be compensable in limited situations, including the foreseeable result of a breach of duty arising out of certain special relationships." *Id.* But Texas courts have held that there is no such special relationship between detainees and CBP guards specifically. *Id.*; *Villafuerte v. United States*, No. 7:16-CV-619, 2017 WL 8793751, at *12 (S.D. Tex. Oct. 11, 2017). Plaintiffs fail to identify any cases supporting such a relationship or a duty to protect against mental anguish absent a special relationship. The claim is therefore dismissed.

## IV.  CONCLUSION

For the foregoing reasons, the Government's motion to transfer this matter is **DENIED**. Dkt. # 15. The Government's partial motion to dismiss is **GRANTED**, and Plaintiffs' abuse of process and negligence-family separation claim are **DISMISSED** without prejudice. *Id.* Within twenty-one (21) days from the date of this Order, Plaintiffs may file an amended complaint addressing the deficiencies described above. If Plaintiffs do not file an amended complaint within that time, the Court may dismiss the challenged claims.


DATED this 3rd day of June, 2022.


The Honorable Richard A. Jones
United States District Judge

ORDER – 13