The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| E.L.A. and O.L.C.,<br><br>          Plaintiffs,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>          Defendant. | Case No. 2:20-cv-1524-RAJ<br><br>**RESPONSE TO DEFENDANT'S PARTIAL MOTION TO DISMISS**<br><br>Note on Motion Calendar:<br>December 9, 2022<br><br>**ORAL ARGUMENT REQUESTED** |

RESP. TO DEF'S PARTIAL MOT. TO DISMISS
Case No. 2:20-cv-1524-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

**INTRODUCTION**

Plaintiffs, an asylum-seeking father and his son, seek to hold Defendant United States accountable for one of the most outrageous and shameful episodes of governmental misconduct in U.S. immigration history: the Trump administration's family-separation program targeting asylum seekers. Defendant's motion to dismiss Plaintiffs' intentional infliction of emotional distress (IIED) cause of action recognizes that the "United States has denounced the prior practice of separating children from their families at the [U.S.]-Mexico border and 'condemn[ed] the human tragedy' that occurred because of the Zero-Tolerance Policy." Dkt. 42 at 2 (second alteration in original) (citation omitted). Yet at the same time, Defendant contends it may not be held responsible because its prior conduct amounted to nothing more than a discretionary policy determination made by its officers. But federal officers have no discretion to violate the law or the Constitution. Indeed, Defendant's employees had no more discretion to emotionally and psychologically torture and permanently damage families by separating children from their parents than they did to physically torture them. Yet that is just what they did. As Plaintiffs have alleged, the "trauma that [they] and other parents and children suffered was not an incidental byproduct of the policy. It was the very point. The government *sought* to inflict extreme emotional distress and other harms" on migrant families by forcibly separating them, with the goal of forcing them to abandon their claims for protection and deterring others fleeing persecution from attempting to seek refuge in the United States. Dkt. 1 ¶¶ 1-2.

Nor can Defendant claim its officers were reasonably executing the law. No law required that O.L.C. be cruelly separated from his father, and no law required that he remain separated from his father for *nine months*, long after the completion of E.L.A.'s summary criminal case. The government's practice before and after the Zero-Tolerance Policy underscores this point. Prior to the policy, the Department of Homeland Security (DHS) ensured that children and

RESP. TO DEF'S PARTIAL MOT. TO DISMISS – 1
Case No. 2:20-cv-1524-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

parents remained together in immigration custody; and later, the Biden administration repudiated the outrageous policy. Indeed, Defendant does not even dispute that the family-separation policy generally, nor its application to Plaintiffs, violated the U.S. Constitution. Thus, neither the discretionary-function nor the due-care exception applies. Similarly, Defendant's claim that it may not be held liable simply because private persons do not engage in immigration-enforcement activities ignores the many decisions from district courts in this circuit repeatedly rejecting the same arguments.

The government intentionally traumatized Plaintiffs by separating O.L.C. from his father for months, failing to provide either of them with information about each other's whereabouts for more than a week after forcibly separating them, and subsequently cruelly deceiving E.L.A. by informing him that he was being reunited with his son, only to instead deport him alone from the country, making him question whether he would ever find his son again. That separation continued for *nine months*, and long after a court order requiring Plaintiffs' reunification. The Federal Tort Claims Act (FTCA) provides individuals a right to compensation where the United States government commits tortious acts that cause harm, and here Plaintiffs have pleaded facts demonstrating that they have a right to compensation for the extraordinary harms they suffered.

## ARGUMENT

### I.   The Discretionary-Function Exception Is Inapplicable to This Case.

Defendant's first argument—that the United States has not waived sovereign immunity as to cases involving the exercise of discretion—is meritless. The FTCA waives the government's sovereign immunity as to lawsuits seeking compensation for tortious conduct committed by federal officials. 28 U.S.C. § 2674. However, Congress provided certain exceptions to this waiver, including the "discretionary function exception" (DFE) which applies to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

duty on the part of a federal agency or an employee of the [g]overnment." *Id.* § 2680(a). The DFE bars claims based on actions that involve (1) an element of judgment or choice and (2) public-policy considerations. *See United States v. Gaubert*, 499 U.S. 315, 322–23 (1991). Notably, "the United States bears the burden of proving the applicability of one of the exceptions to the FTCA's general waiver of immunity." *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).

Here, Defendant's argument fails at the first prong. Federal officers do not have discretion to violate federal law, including the U.S. Constitution. Moreover, Plaintiffs' injuries did not result from any discretionary decision or judgment made by immigration officers in the field. Defendant's employees separated O.L.C. from his father due to a policy mandate issued by the highest levels of the Trump administration to separate migrant children and parents.

A.    Federal Officers Have No Discretion to Violate the U.S. Constitution.

Defendant argues that the family-separation policy and the actions detailed in Plaintiffs' complaint are the result of discretionary decisions. Dkt. 42 at 11–20. However, the DFE is inapplicable here because the government does not have the "discretion" to violate the Constitution or any other law. *See, e.g.*, *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000) ("In general, governmental conduct cannot be discretionary if it violates a legal mandate."); *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004) ("[T]he Constitution can limit the discretion of federal officials such that the FTCA's [DFE] will not apply." (first alteration in original) (citation omitted)); *Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016) (similar). "In sum, the discretionary function exception insulates the Government from liability" only where "the action challenged in the case involves the *permissible* exercise of policy judgment." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 537 (1988) (emphasis added).

RESP. TO DEF'S PARTIAL MOT. TO DISMISS – 3
Case No. 2:20-cv-1524-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Plaintiffs' complaint explicitly alleges they "suffered significant physical and emotional harm as a direct result of Defendant's unlawful conduct and violation of Plaintiffs' constitutional and statutory rights." Dkt. 1 ¶ 7. The complaint details these violations in several ways. It states:

> Plaintiffs' claims concern the entirely predictable—and, in fact, actually desired—harms caused by Defendant's unprecedented conduct in systematically separating asylum-seeking parents and children. Defendant's employees forcibly separated Plaintiffs after they entered the United States in June 2018 and unlawfully refused to process E.L.A.'s request for asylum. Defendant's employees detained Plaintiffs in separate facilities thousands of miles apart by detaining E.L.A. in Texas and forcibly transferring O.L.C. to Lincoln Hall Boys Haven (Lincoln Hall) in Lincolndale, New York. For more than a week, Plaintiffs did not even know each other's whereabouts, much less when—or if—they would see each other again. In July 2018, after a month of separation, U.S. government officials told E.L.A. that he was about to be reunited with his son, but this was a cruel ruse. Instead of taking him to be reunited with O.L.C., officials instead took him to an airport and unlawfully deported E.L.A. to Guatemala.

*Id.* ¶¶ 3–4.

The complaint then lays out these unlawful acts in more detail. First, shortly after Plaintiffs' initial apprehension, Defendant's employees physically separated E.L.A.—who was handcuffed—and his minor son O.L.C. over Plaintiffs' desperate objections. *Id.* ¶ 21. O.L.C. wept, tried to cling to his father, and screamed as he was separated from E.L.A. *Id.* ¶ 22. Defendant's employees then detained E.L.A. in a Customs and Border Protection (CBP) facility so cold that it was known as an "*hielera*" or "ice box," where he was subjected to inhumane conditions. *Id.* ¶¶ 21, 25–31. Defendant's employees made the cell colder by turning up the air conditioning when E.L.A. and the other separated fathers asked about their children. *Id.* ¶ 26. Defendant's employees also compelled E.L.A. to endure an overcrowded, dirty cell and provided insufficient food and water. *Id.* ¶¶ 27–28. While handing E.L.A. his food, one of Defendant's employees taunted him by saying, "this is what you wanted when you came to the United States." *Id.* ¶ 28. Further, Defendant's employees deprived E.L.A of sleep through constantly

RESP. TO DEF'S PARTIAL MOT. TO DISMISS – 4
Case No. 2:20-cv-1524-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

running fluorescent lights, frequent roll calls, cramped conditions, and failing to provide a blanket or pillow. *Id*. ¶ 29.

Notably, Defendant's employees' separation of Plaintiffs occurred even *before* they initiated criminal proceedings for illegal reentry against E.L.A. *Id*. ¶¶ 21, 31. At the same time Defendant's employees undertook the separation, they designated O.L.C. as an unaccompanied child under the Trafficking Victims Protection Reauthorization Act (TVPRA). *Id*. ¶¶ 21–22, 37–39. They did so even though E.L.A.'s criminal prosecution would last mere hours, *id*. ¶ 38, he was sentenced to time served, *id*. ¶ 37, and he produced O.L.C.'s birth certificate to CBP, *id*. ¶ 25. The complaint cites public statements from then-President Trump and DHS Secretary Kristjen Nielsen confirming that such family separations were part of a specific, intentional federal policy. *Id*. ¶¶ 2, 34. Plaintiffs further allege that, *after* the summary conclusion of E.L.A.'s prosecution, Defendant's employees maintained the forced separation of E.L.A. from O.L.C., even though both father and son remained in immigration custody. *Id*. ¶¶ 37–39, 41, 48–50. And Defendant's officers made the situation yet more traumatic for Plaintiffs by refusing to inform E.L.A. of his child's location or to facilitate any communication between the two during the first week of their forced separation. *Id*. ¶¶ 41–42. Further, Plaintiffs allege that Defendant's employees cruelly prolonged the forced separation of E.L.A. and O.L.C. by unlawfully deporting E.L.A. to Guatemala and denying him a credible fear interview, despite the fact that he had expressed a fear of being harmed in Guatemala. *Id*. ¶¶ 25, 43. After an excruciating *nine months* of forced separation, Plaintiffs were finally reunited. *Id*. ¶ 46. Notably, however, Defendant did not facilitate this long overdue reunification; instead, E.L.A. was permitted to re-enter the United States only because of a federal court order. *Id*. ¶ 44. Plaintiffs end by asserting that these actions "punished [them] for seeking safety in the United States"—which is statutorily obligated to adjudicate their claims for protection. *Id*. ¶ 80. As they note, such actions were taken "in

RESP. TO DEF'S PARTIAL MOT. TO DISMISS – 5
Case No. 2:20-cv-1524-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

disregard for [their] statutory and constitutional rights, their dignity as persons, and their love for one another as a family." *Id.* ¶ 81.

These allegations demonstrate Defendant's employees violated Plaintiffs' constitutional rights. Indeed, a district court previously addressed this constitutional question with respect to a nationwide class of separated families, examining whether "the Government's practice of separating class members from their children, and failing to reunite those parents who have been separated, without a determination that the parent is unfit or presents a danger to the child violate[d] the parents' substantive due process rights to family integrity under the Fifth Amendment." *Ms. L. v. U.S. Immigr. & Customs Enf't.*, 310 F. Supp. 3d 1133, 1142 (S.D. Cal. 2018). The district court granted a nationwide injunction against such family separations and ordered the reunification of previously separated families, holding that the practice likely violated the Constitution. The court explained: "A practice of this sort implemented in this way is likely to be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience,' interferes with rights 'implicit in the concept of ordered liberty[,]' and is so 'brutal and offensive that it [does] not comport with traditional ideas of fair play and decency.'" *Id.* at 1145–46 (citations omitted); *see also J.S.R. ex rel. J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 741 (D. Conn. 2018) (noting that even the government "agree[d] that a constitutional violation occurred when [it] separated children from their parents").

Defendant belatedly acknowledges that binding circuit case law holds that the government cannot invoke the DFE where its employees' actions violate the Constitution, only to assert that "Plaintiffs do not allege the violation of any constitutional provision with the requisite degree of specificity required by *Gaubert*." Dkt. 42 at 19. But its cited authorities do not support its position that Plaintiffs' allegations are insufficient. To the contrary, in *Nurse*, the Ninth Circuit reversed a grant of dismissal on DFE grounds where the "bare allegations of the

complaint" alleged unconstitutional conduct but did not state the "specific constitutional mandates" that were violated. 226 F.3d at 1002; *see also Fuentes-Ortega v. United States*, No. CV-22-00449-PHX-DGC, 2022 WL 16924223, at *2 (D. Ariz. Nov. 14, 2022) (rejecting the argument Defendant makes here because "it does not appear to comport with the holding in *Nurse*"); *E.S.M. v. United States*, No. CV-21-00029-TUC-JAS, 2022 WL 11729644, at *4 (D. Ariz. Oct. 20, 2022) (noting *Nurse* left the "inquiry" concerning "'the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of a federal actor'" "for later stages of litigation") (citation omitted)); *F.R. v. United States*, No. CV-21-00339-PHX-DLR, 2022 WL 2905040, at *5 (D. Ariz. July 22, 2022) (relying in part on *Nurse* when declining to require greater specificity in alleging constitutional violation).

Moreover, Defendant fails to acknowledge the highly detailed and specific allegations of unlawful conduct in the complaint, *see supra* pp. 4–6, including the allegations that Defendant's employees "offended Plaintiffs' rights to family integrity [and] their dignity," did not allow E.L.A. to pursue his asylum claim, Dkt. 1 ¶ 80, and acted with "disregard for Plaintiffs' statutory and constitutional rights, their dignity as persons, and their love for one another as a family," *id.* ¶ 81. Notably, the *Ms. L* court and others have already found that similar facts violate the due-process right to familial integrity, 310 F. Supp. 3d at 1142–46, a right that has deep historical roots in this country, *see, e.g.*, *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (remarking on the Court's "historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment"); *Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("[T]he interest of parents in the care, custody, and control of their children [] is perhaps the oldest of the fundamental liberty interests recognized by this Court."); *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) ("'[T]his constitutional interest in familial

RESP. TO DEF'S PARTIAL MOT. TO DISMISS – 7
Case No. 2:20-cv-1524-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents.'" (citation omitted)).

Accordingly, *every* district court in the Ninth Circuit to have addressed this argument has agreed that the DFE does not apply to FTCA claims challenging the Trump administration's family-separation policy. *See, e.g.*, *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020) ("Because government officials lack discretion to violate the Constitution, the discretionary function exception cannot shield conduct related to the government's likely unconstitutional separation of plaintiffs."); *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020) (citing to *Ms. L*'s finding that family separation likely violates the Constitution); *Nunez Euceda v. United States*, No. 2:20-cv-10793-VAP-GJSx, 2021 WL 4895748, at *3 (C.D. Cal. Apr. 27, 2021) ("Plaintiff has plausibly alleged that the government's Policy violated his constitutional rights."); *Fuentes-Ortega*, 2022 WL 16924223, at *2–3 (same); *E.S.M.*, 2022 WL 11729644, at *4 (same); *B.A.D.J. v. United States*, No. CV-21-00215-PHX-SMB, 2022 WL 11631016, at *3 (D. Ariz. Sept. 30, 2022) (same); *F.R.*, 2022 WL 2905040, at *5 (same); *A.F.P. v. United States*, No. 1:21-cv-00780-DAD-EPG, 2022 WL 2704570, at *12 (E.D. Cal. July 12, 2022) (same); *A.I.I.L. v. Sessions*, No. CV-19-00481-TUC-JCH, 2022 WL 992543, at *4 (D. Ariz. Mar. 31, 2022) (same).

Tellingly, Defendant ignores *all* of these decisions from within the Ninth Circuit and instead relies primarily on one case from Texas, *Peña Arita v. United States*, 470 F. Supp. 3d 663 (S.D. Tex. 2020), which held that the decisions to separate families were protected by the DFE. *See* Dkt. 42 at 16. But the *Peña Arita* court did not even address whether the exception applies to conduct alleged to violate the Constitution or other legal mandates. 470 F. Supp. 3d at 686–87. The other cases Defendant cites are also readily distinguishable, for they focus on the decision to

detain and security measures—as opposed to the decision to separate, or the failure to return, a child from/to their parent. *See* Dkt. 42 at 15–16.

Defendant also presents a straw man, arguing that Plaintiffs impermissibly challenge the agency's decisions to refer E.L.A. for illegal-entry prosecution and to detain Plaintiffs during the pendency of their removal proceedings. Dkt. 42 at 14–15. "This argument, however, rests on the false premise that by taking custody of children whose parents are 'amenable to prosecution,' the United States is simply enforcing federal law. As previously explained, the United States was not enforcing federal law when it separated Plaintiffs," but, rather, intentionally inflicting harm. *C.M.*, 2020 WL 1698191, at *4. Plaintiffs do not contest the government's authority either to bring a misdemeanor criminal-entry charge against E.L.A., or to exercise its authority to detain Plaintiffs while placing them in removal proceedings. While Defendant has discretion with respect to the choice to prosecute individuals in either criminal or removal proceedings, and has discretion over custody determinations, there is no discretion to intentionally inflict severe emotional and psychological damage by separating children from their parents.

*Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enforcement* is instructive in this respect. 319 F. Supp. 3d 491 (D.D.C. 2018). There, the plaintiff was separated from her children during a brief prosecution for illegal entry, and the court concluded that the children were "not true unaccompanied minors within the meaning of the [TVPRA]." *Id.* at 495–96 & n.2. Rather, "they were rendered unaccompanied by the [government's] unilateral and likely unconstitutional action[]" of forcibly separating them from their mother. *Id.* at 495 n.2. Thus, the government could not designate the children unaccompanied minors simply because it forcibly separated them from their mother. *Id.* at 500. The court also rejected the argument that because the mother was "in lawful immigration custody," she was "unavailable to provide care and physical custody." *Id.* Similarly, in *Bunikyte v. Chertoff*, which Defendant cites, Dkt. 42 at 6, 16,

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

the court observed that a Congressional committee had rejected the definition of "unaccompanied" that Defendant advances: "Children who are apprehended by [DHS] while in the company of their parents are not in fact 'unaccompanied' and if their welfare is not at issue, they should not be placed in ORR custody." No. A-07-CA-164-SS, 2007 WL 1074070, at *1–2 (W.D. Tex. Apr. 9, 2007) (quoting H. Rep. No. 109-79, at 38 (2005)).

Despite purporting now to disavow its prior outrageous policy, Defendant argues that the family separation was simply the result of discretionary prosecution and detention decisions. Dkt. 42 at 14–18. But federal policies and the facts pleaded in the complaint belie that argument. Prior to the Zero-Tolerance Policy, children who were apprehended at or near the border were not torn away from their parents. Indeed, the Border Patrol's Hold Rooms and Short Term Custody Policy mandates that children *not* be separated from their parents, and instead directs that family groups "will be detained as a unit." Maltese Decl. Ex. A at 12–13. Notwithstanding this policy, in December 2017, the Department of Justice and DHS officials exchanged a memo entitled "Policy Options to Respond to Border Surge of Illegal Immigration." *Id.* Ex. B at 1. Two of the policy options were entitled: "Increase Prosecution of Family Unit Parents" and "Separate Family Units." *Id.* Ex. B at 1. Under the prosecution policy, "parents would be prosecuted for illegal entry . . . and the minors present with them would be placed in [U.S. Department of Health and Human Services (HHS)] custody as [unaccompanied children]." *Id.* Ex. B at 1. Similarly, the separation policy called for an announcement that adults would be placed in detention while children would be placed in HHS custody. *Id.* Ex. B at 1. Thus, the memo underscores that the family-separation policy was a new, separate policy—not simply a natural, collateral consequence of increased criminal prosecutions.

Indeed, as documented by several suits across the country, Defendant chose to separate the children and label them as unaccompanied *even where no criminal charges were filed* against

RESP. TO DEF'S PARTIAL MOT. TO DISMISS – 10
Case No. 2:20-cv-1524-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

the parent. *See, e.g., Wilbur P.G. v. United States*, No. 4:21-CV-04457-KAW, 2022 WL 3024319, at *1 (N.D. Cal. May 10, 2022); *C.M.*, 2020 WL 1698191, at *3; *A.P.F.*, 492 F. Supp. 3d at 993; *B.A.D.J.*, 2022 WL 11631016, at *1. Further, "[e]ven where the parent was prosecuted, the Government kept the families separated even after the parent served a cursory sentence . . . . Parents were separated from their children for months, oftentimes without knowing anything about where their children were, and with the children thinking they would never see their parents again." *Wilbur P.G.*, 2022 WL 3024319, at *1. That is precisely what occurred in this case: "E.L.A. was sentenced to time served and a $10 fine. He never entered the custody of the Bureau of Prisons (BOP), and other than his brief appearance in the courthouse, E.L.A. was in DHS custody at all times." Dkt. 1 ¶ 37. Yet Defendant's employees refused to return O.L.C. to his father. Defendant then compounded this harm by unlawfully deporting E.L.A. to Guatemala—despite his expressed fear of return and in violation of both the asylum provisions in the INA, *see, e.g.*, 8 U.S.C. § 1158, and a federal court order in *Ms. L.*, 310 F. Supp. 3d at 1149, requiring the family's reunification, Dkt. 1 ¶¶ 4, 43. In doing so, Defendant's employees subjected Plaintiffs to *nine months* of forced separation. *Id*. ¶ 6. And, notably, the prolonged separation ended only because E.L.A. was able to re-enter the country in March of 2019, pursuant to a federal district court order in the *Ms. L.* litigation. *Id.* ¶¶ 44–46.

Finally, the *Flores* Agreement in no way justifies Defendant's family-separation policy, as Defendant implies. *See* Dkt. 42 at 5–6, 16. The Agreement permits parents to "affirmatively waive their children's rights to prompt release and placement in state-licensed facilities," as Defendant has conceded in other litigation. *Flores v. Sessions*, No. CV 85-4544-DMG, 2018 WL 4945000, at *4 (C.D. Cal. July 9, 2018); *see also id.* ("'It is a well settled maxim that a party may waive the benefit of any condition or provision made in his behalf …'") (quoting *Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 662 (9th Cir. 1998))); J. Mot. Regarding Scope of

RESP. TO DEF'S PARTIAL MOT. TO DISMISS – 11
Case No. 2:20-cv-1524-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

the Court's Prelim. Inj., *Ms. L.*, No. 18-cv-0428-DMS (S.D. Cal. July 13, 2018) (Dkt. 105)

(agreeing that parents can waive a child's *Flores* rights in order to remain in custody together).

And the *Flores* Agreement—far from mandating separation—permits family detention if it

complies with the Agreement's requirements. *See Bunikyte*, 2007 WL 1074070, at \*3. Indeed,

the *Flores* Agreement is designed to protect the best interests of children, *Flores*, 2018 WL

4945000, at \*5, and it promotes family unification, *see Bunikyte*, 2007 WL 1074070, at \*16.

Defendant's use of *Flores* to justify intentionally harming children thus turns *Flores* on its head.

Notably, Defendant does not assert that immigration officers separated Plaintiffs because of the

*Flores* Agreement.

Binding circuit precedent makes clear that the DFE does not apply where, as here,

plaintiffs allege federal officers' actions violated the Constitution. Accordingly, the Court should

deny Defendant's motion to dismiss on this ground.

B. <u>Defendant's Officers Followed a Clear Policy Directive and Did Not Exercise Any Individual Discretion in Separating E.L.A. and O.L.C.</u>

In addition, the DFE has no application here because the enforcement officers who

executed Plaintiffs' separation were not exercising their own judgment. Instead, they were

following the family-separation policy dictated by high-ranking officials of the Trump

administration, which directed that migrant children like O.L.C. be torn away from their parents.

The Supreme Court has explained that "[t]he [DFE's] requirement of judgment or choice is not

satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an

employee to follow,' because 'the employee has no rightful option but to adhere to the

directive.'" *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536); *see also Sabow v.*

*United States*, 93 F.3d 1445, 1451 (9th Cir. 1996). While recognizing *Gaubert*, *see* Dkt. 42 at 19,

Defendant fails to acknowledge that the systemic, involuntary separation of thousands of

RESP. TO DEF'S PARTIAL MOT. TO DISMISS – 12
Case No. 2:20-cv-1524-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

children from their parents was not the product of discretionary choices made by rank-and-file

DHS officers, but rather the product of a federal policy directive, *see* Dkt. 1 ¶¶ 32–36. As other

courts have held, "[s]ince the family separation policy was a policy prescribed by the Trump

Administration, the front-line employees tasked with implementing the policy did not reasonably

have any element of choice." *Wilbur P.G.*, 2022 WL 3024319, at *4.

In sum, Defendant's family-separation policy mandated its employees to engage in

unconstitutional conduct, without conferring any discretion to deviate from the policy.

Accordingly, the DFE does not apply.

C.     The DFE Does Not Bar Plaintiffs' Conditions-Related Allegations.

Defendant also challenges Plaintiffs' allegations regarding the conditions E.L.A.

experienced while in DHS custody. But here too, the DFE does not apply.

Plaintiffs allege that after Defendant's employees separated them, they subjected E.L.A.

to "temperatures in the *hielera* similar to the bitter cold of Guatemala's mountains." Dkt. 1 ¶ 26.

He was forced to sleep "on the concrete floor with only an aluminum foil blanket"—no "mats,

blankets, or pillows." *Id.* ¶ 29. What is more, when the detained fathers would ask "where their

children were," CBP officers responded by "turning up the air conditioning to make the cells

even colder" to "punish" them for the questions. *Id.* ¶ 26. The *hielera* was also "cramped, dirty,

and uncomfortable," housing about 15 men in the ten-by-five-foot cell. *Id.* ¶ 27. It was so packed

that E.L.A. "could not [even] straighten his legs" when he slept. *Id.* ¶ 29. The cell also had no

beds or access to drinking water. *Id.* ¶ 27. Defendant's employees did not allow E.L.A. or the

other men "to brush [their] teeth, shower, or change clothes" while in the *hielera*, resulting in a

"horrible" smell. *Id.* The men were all forced to share a "single toilet without any privacy." *Id.*

Defendant's employees only provided E.L.A. with a "simple sandwich and juice box twice per

day," and the "only water available … was in the bathroom area where the detainees washed

their hands and used the toilet." *Id*. ¶ 28. He was also locked in those conditions for 24 hours a day, "with no access to natural light or exercise." *Id*. ¶ 29. E.L.A. estimates he slept for about one to two hours per day, especially because Defendant's employees "roused him frequently by conducting a roll call" "every few hours, 24 hours a day." *Id*. ¶ 29. The "psychological torture" caused by the lack of sleep "only compounded E.L.A.'s distress" at being separated from his son, whom he was not allowed to speak to for about a week. *Id*. ¶¶ 29, 42.

The DFE does not apply to these allegations, which "are factual allegations primarily aimed at demonstrating the harm resulting from the separations." *A.P.F.*, 492 F. Supp. 3d at 997. This Court should thus "reject[] the United States' re-categorization of Plaintiffs' factual allegations as standalone claims," as other courts considering family-separation FTCA cases have done. *Id*. at 996. Indeed, Plaintiffs have not pleaded a standalone claim regarding the conditions of confinement. *See id.* at 996–97; *see also A.I.I.L.*, 2022 WL 992543, at *3–4 (rejecting government's DFE argument in family-separation case for same reason); *F.R.*, 2022 WL 2905040, at *5 (same); *C.M.*, 2020 WL 1698191, at *4 (same).

In any event, Plaintiffs' conditions-related allegations did not involve any element of judgment or choice. Rather, federal policy "mandate[d] certain actions that [Defendant's] employee[s] failed to follow." *Lam v. United States*, 979 F.3d 665, 674 (9th Cir. 2020). For instance, under CBP's National Standards on Transport, Escort, Detention, and Search (NSTEDS), CBP officers were required to "maintain hold room temperature within a reasonable and comfortable range for both detainees and officers/agents." Maltese Decl. Ex. C at 16. The NSTEDS further decrees that "*[u]nder no circumstances* will officers/agents use temperature controls in a punitive manner." *Id.* Ex. C at 16. (emphasis added). As for bedding, it mandates that adults "be provided" a blanket. *Id.* Ex. C at 17, 22. CBP's Hold Room Policy imposes similar requirements. *Id.* Ex. A at 8. Potable drinking water must also be provided to detainees.

RESP. TO DEF'S PARTIAL MOT. TO DISMISS – 14
Case No. 2:20-cv-1524-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

*Id.* Ex. A at 8, Ex. C at 18. The policies also call for those detained for three days to be allowed to shower, *id.* Ex. A at 9, Ex. C at 17, and for all detainees to have access to restrooms with "a reasonable amount of privacy," *id.* Ex. C at 18.

Defendant's employees also had obligations requiring them to facilitate communication between Plaintiffs. The *Flores* Agreement requires the government to provide minors with "contact with family members who were arrested with the minor." *Id.* Ex. D at 7–8. Similarly, Immigration and Customs Enforcement's Performance-Based National Standards states that "facility staff shall make special arrangements to permit the detainee to speak by telephone with an immediate family member detained in another facility." *Id.* Ex. E at 390.

Here, Plaintiffs allege unambiguous violations of these requirements, none of which Defendant's employees had any discretionary authority to disregard. And to the extent that their actions violated Plaintiffs' constitutional rights (e.g., by preventing Plaintiffs from communicating with each other for months after being forcibly separated and detained thousands of miles apart), Defendant's employees "d[id] not have discretion to violate the Constitution." *Nieves Martinez v. United States*, 997 F.3d 867, 877 (9th Cir. 2021).

Moreover, these violations of federal standards governing immigration detention are not subject to "public policy analysis," as they do not involve "decisions grounded in social, economic, or political policy." *Bailey v. United States*, 623 F.3d 855, 861 (9th Cir. 2010) (quoting *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008)). Plaintiffs' allegations derive not only from Defendant's employees' failure to follow their own policies, but also from those employees' failure to accord Plaintiffs basic dignity.

Notably, at least one other court faced with allegations of similar violations of immigration-detention policies has held that the DFE did not apply for both reasons. In *Ruiz ex. rel. E.R. v. United States*, the plaintiff alleged that CBP officers had "violated the *Flores*

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

[Agreement] . . . as well as [CBP's] own internal policies" regarding the meals and bedding a youth received. No. 13-CV-1241, 2014 WL 4662241, at *6 (E.D.N.Y. Sept. 18, 2014). Relying on "the explicit policies and procedures of the *Flores* Agreement and the CBP's internal policies," the court rejected Defendant's claim that the DFE applied. *Id.* at *8. In addition, the court held that, "even if the binding guidance . . . did not apply," the allegations were not "susceptible to policy analysis." *Id.* at *9. The court stressed that it could not "discern how deciding to wait fourteen hours before contacting E.R.'s parents and to only provide the child with a cookie and a soda over twenty hours could constitute a considered judgment grounded in social, economic, or political policies." *Id.* "Rather, based on plaintiff's allegations, the CBP Officers' actions appear more plausibly to be the result of negligence or laziness, and these acts do not warrant the application of the [DFE]." *Id.*; *see also Scott v. Quay*, No. 19-CV-1075, 2020 WL 8611292, at *13–14 (E.D.N.Y. Nov. 16, 2020) (noting that an official's "laziness, carelessness, or inattentiveness" in carrying out discretionary duties are negligent acts not grounded in policy considerations).

The out-of-circuit cases cited in Defendant's motion are distinguishable. In those cases, the plaintiffs did not identify any policies that mandated certain actions. Nor did the cases involve allegations that federal employees denied individuals their most basic dignity. In fact, some of Defendant's own cases even refute its position. For example, in *Bultema v. United States*, the court held that the DFE did *not* apply because the prison's policy "dictated the[] actions" of prison employees. 359 F.3d 379, 385 (6th Cir. 2004). The other cases Defendant cites are distinguishable on the same basis or simply irrelevant. *See* Dkt. 42 at 18–19 (citing cases). In sum, the DFE does not apply to these allegations.

RESP. TO DEF'S PARTIAL MOT. TO DISMISS – 16
Case No. 2:20-cv-1524-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

## II.     The Due-Care Exception Does Not Bar Plaintiffs' IIED Claim.

Defendant's forced separation of Plaintiffs was neither mandated by statute or regulation, nor executed with due care. Accordingly, the due-care exception to the FTCA's waiver of sovereign immunity, which insulates from suit the actions of federal employees "exercising due care, in the execution of a statute or regulation," does not apply here. 28 U.S.C. § 2680(a).

Courts in this circuit "apply the two-prong test established by the decision in *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005) in determining whether the due care exception applies." *A.F.P.*, 2022 WL 2704570, at *14 (citing cases). Under the *Welch* test, this exception applies only if: (1) "a specific action is *mandated*" by "the statute or regulation in question"; and (2) "the officer exercised due care in following the dictates of that statute or regulation." *Welch*, 409 F.3d at 652 (emphasis added). Here, Defendant fails at both steps.

First, the due-care exception is not applicable because Defendant's employees separated Plaintiffs pursuant to an executive *policy*. Dkt. 1 ¶¶ 1-5, 32–40. "Actions taken pursuant to executive policy are not shielded by the due care exception" as they are not taken "pursuant to any statute or regulation." *A.P.F.*, 492 F. Supp. 3d at 996. To avoid this conclusion, Defendant asserts that the separation was instead "required" by the TVPRA once its employees decided "to prosecute E.L.A. and to detain him in a secure immigration detention facility separate from" his minor son, O.L.C. Dkt. 42 at 21.

Perversely, this argument uses a statute designed to *protect* children to justify *harming* them. The TVPRA requires only the transfer of *unaccompanied* minors, 8 U.S.C. § 1232(b)(3)—that is, a child without a parent or guardian "available to provide care and physical custody," 6 U.S.C. § 279(g)(2)(C)(ii). In this case, O.L.C. was "not [a] true unaccompanied minor[] within the meaning of the statute; [he was] rendered unaccompanied by the unilateral and likely unconstitutional actions of [D]efendant[]." *Jacinto-Castanon*, 319 F. Supp. 3d at 495 n.2. The

TVPRA simply does not apply to cases where a family enters the U.S. and is initially apprehended *together*—even where the parent is subject to brief separation for an illegal-entry prosecution. *See id.* at 500–01 & n.3. Indeed, in this case, E.L.A. and O.L.C. were forcibly separated even though E.L.A. was not even removed from the immigration-detention facility pending his misdemeanor proceedings. Dkt. 1 ¶¶ 37–39. In fact, E.L.A.'s criminal hearing only "took a matter of hours," *id.* ¶ 38, and both before and after that brief hearing he was "in DHS custody at all times"—he never entered federal criminal custody at all, except for that brief time in court, *id.* ¶ 37. Moreover, E.L.A., like most other parents subjected to family separation, was simply sentenced to time served (and a $10 fine). *Id.* The TVPRA thus did not "require" Plaintiffs' indefinite separation simply because of E.L.A.'s prosecution. *See A.F.P.*, 2022 WL 2704570, at *15 ("[T]he conduct must be *required*, not merely authorized" for the exception to apply); *Wilbur P.G.*, 2022 WL 3024319, at *5 (finding separations were made pursuant to executive policy, not the TVPRA); *A.E.S.E. v. United States*, No. 21-CV-0569 RB-GBW, 2022 WL 4289930, at *13–14 (D.N.M. Sept. 16, 2022) (same). Accordingly, Defendant is wrong to assert that the TVPRA requires such actions. If anything, the TVPRA underscores how illegal those actions were, as even "unaccompanied" children were supposed to be placed in the "least restrictive setting that is in the best interest of the child," 8 U.S.C. § 1232(c)(2)(A)—which would undoubtedly be *with their parent* in most cases.

Second, Defendant also fails to satisfy *Welch* because its employees did not implement the separation with "due care." "'Due care' implies at least some minimal concern for the rights of others." *Hatahley v. United States*, 351 U.S. 173, 181 (1956). Despite bearing the burden of proving the exception applies, *Prescott*, 973 F.2d at 702, Defendant has not argued its employees acted with the requisite care, *see* Dkt. 42 at 20–21. Nor can it: the family-separation policy was cruel and inhumane by design, Dkt. 1 ¶¶ 1–5, 3–36, 80–81, and it was executed in that manner in

RESP. TO DEF'S PARTIAL MOT. TO DISMISS – 18
Case No. 2:20-cv-1524-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

E.L.A. and O.L.C.'s case. "Defendant's employees did not give E.L.A. and O.L.C. the chance to hug, kiss, or even say goodbye before taking O.L.C. away," while E.L.A. was in handcuffs and O.L.C. wept and attempted to cling to his father. *Id.* ¶¶ 21–22. O.L.C. was taken away screaming, while his father was haunted by "the fear etched" on his son's face as Defendant's employees dragged him away. *Id.* ¶ 22. Despite E.L.A.'s repeated requests to learn of his son's whereabouts, Defendant's employees refused to tell him, *id.* ¶¶ 24, 30, 41, and even retaliated against him and other fathers who asked for the same information by making their cell, colloquially called an "ice box," *id.* ¶ 21, even colder, *id.* ¶ 26. Defendant's employees only permitted two brief phone calls between father and son while they were both in detention, and only a week after their initial separation. *Id.* ¶ 42. They then cruelly deceived E.L.A. by telling him he would finally be reunited with his son only to deport him back to Guatemala—without his son—on the day of their supposed reunification. *Id.* ¶¶ 42-43. Other courts have found that Defendant failed to exercise due care in similar circumstances. *See, e.g.*, *A.E.S.E.*, 2022 WL 4289930, at *13–14 (separation was carried out "in a manner designed to provoke emotional distress"). The due-care exception therefore does not shield Defendant from suit here.

**III.    A Private-Person Analogue for Plaintiffs' IIED Claim Exists under Texas law.**

The FTCA makes Defendant liable only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Defendant argues no private-person analogue exists to support an FTCA IIED claim here because "only the federal government has the authority to enforce federal criminal and immigration laws and make detention determinations". Dkt. 42 at 22. The Supreme Court, however, has rejected similar arguments that § 2674 should be read "as excluding liability in the performance of activities which private persons do not perform." *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955). To require otherwise "would give the federal government absolute immunity to violate

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

the rights of those for whom it has sole decision-making authority." *Wilbur P.G.*, 2022 WL 3024319, at *5. "The fact that Defendant has exclusive authority to enforce immigration law does not give it carte blanche to commit torts against migrants in its custody." *E.S.M.*, 2022 WL 11729644, at *3. Indeed, FTCA claims are regularly brought against immigration authorities for tortious actions committed while performing enforcement functions that private persons are not authorized to perform. *See, e.g., Arce v. United States*, 899 F.3d 796, 798, 801 (9th Cir. 2018) (finding jurisdiction for FTCA claim against federal government for unlawful removal); *Vargas Ramirez v. United States*, 93 F. Supp. 3d 1207, 1227–29 (W.D. Wash. 2015) (federal government liable under FTCA for false arrest).

Looking to the tort claims recognized by the law of the state where the challenged conduct occurred, courts are guided by the "most reasonable analogy" for that conduct in determining whether a private-person analogue exists. *A.F.P.*, 2022 WL 2704570, at *9 (quoting *Dugard v. United States*, 835 F.3d 915, 919 (9th Cir. 2016)). The analogue "need only exist under 'like circumstances,' not 'under the same circumstances.'" *Id.* (quoting *Indian Towing*, 350 U.S. at 64); *see also Fuentes-Ortega*, 2022 WL 16924223, at *5 (rejecting Defendant's "unduly narrow characterization of the conduct in question" in refusing to dismiss claims for alleged lack of a private-person analogue in family separation case). Here, Plaintiffs' IIED claim has a private-person analogue in Texas.

In analyzing the IIED cause of action under Texas law, at least two courts have held in family-separation cases that a private-person analogue exists. The *A.F.P.* court relied on *M.D.C.G. v. United States*, No. 7:15-cv-00552, 2016 WL 6638845, at *11–12 (S.D. Tex. Sept. 13, 2016), which permitted an IIED claim to proceed based on allegations of trauma caused by the immigration authorities' separation of two minors from their families. 2022 WL 2704570, at *10. Plaintiffs allege a similar claim here. Dkt. 1 ¶¶ 83-87. And in *A.E.S.E.*, the court

RESP. TO DEF'S PARTIAL MOT. TO DISMISS – 20
Case No. 2:20-cv-1524-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

acknowledged that Texas courts have allowed IIED claims based on the separation of children from their parents. 2022 WL 4289930, at *14 (citing *Eberle v. Adams*, 73 S.W.3d 322, 336–37 (Tex. App. 2001) (IIED) and *Silcott v. Oglesby*, 721 S.W.2d 290 (Tex. 1986) (recognizing damages for "mental anguish" in child's abduction)); *see also In re J.G.W.*, 54 S.W.3d 826, 829, 833 (Tex. App. 2001) (IIED claim arising from child abduction was not barred by res judicata).

The cases Defendant relies on concern the adjudication of immigration benefits, a circumstance that is not "reasonably analogous" to what happened here. *See Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) (denial of "immigration status adjustment application"); *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) (withdrawal of immigration benefits). Defendant's arguments are thus unavailing, for Texas law recognizes the viability of Plaintiffs' IIED claim against private individuals in like circumstances.

## CONCLUSION

For all these reasons, the Court should deny Defendant's motion to dismiss Plaintiffs' claim for intentional infliction of emotional distress arising from Defendant's employees' cruel separation of father and son pursuant to the Trump administration's family separation policy.

Dated this 5th day of December, 2022

s/ Matt Adams
Matt Adams
matt@nwirp.org

s/ Aaron Korthuis
Aaron Korthuis
aaron@nwirp.org

s/ Audrey Gilliam
Audrey Gilliam
audrey@nwirp.org

s/ Glenda M. Aldana Madrid
Glenda M. Aldana Madrid
glenda@nwirp.org

RESP. TO DEF'S PARTIAL MOT. TO DISMISS – 21
Case No. 2:20-cv-1524-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

**NORTHWEST IMMIGRANT RIGHTS PROJECT**
615 Second Avenue, Suite 400
Seattle, Washington 98104
Tel: (206) 957-8611
Fax: (206) 587-4025

RESP. TO DEF'S PARTIAL MOT. TO DISMISS – 22
Case No. 2:20-cv-1524-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.

DATED this 5th day of December, 2022.

s/ Glenda M. Aldana Madrid
Glenda M. Aldana Madrid
Northwest Immigrant Rights Project
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8646
(206) 587-4025 (fax)

RESP. TO DEF'S PARTIAL MOT. TO DISMISS – 23
Case No. 2:20-cv-1524-RAJ

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611